Filed 10/2/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| JENNIFER S. et al.,<br><br>      Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>      Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>      Real Party in Interest. | A151627<br><br>(City & County of San Francisco Super. Ct. No. JD17-3028) |

In this consolidated writ proceeding, Jennifer S. (mother) and Kenneth S. (father) seek extraordinary relief from the juvenile court order denying them both reunification services with respect to their infant daughter, K.S. (born January 2017), and setting a permanency planning hearing pursuant to section 366.26 of the Welfare and Institutions Code.[1]  At the June 2017 dispositional hearing in this matter, each parent was bypassed for reunification services in accordance with subdivisions (b)(10) and (b)(11) of section 361.5.  Pursuant to those statutes, reunification services need not be offered to a parent if the court has previously terminated reunification services or parental rights with respect to a sibling or half sibling of the child and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.  All rule references are to the California Rules of Court.

1

sibling . . . ." (§ 351.5, subd. (b)(10) & (11).)  Here, both parents argue that the juvenile court erred in finding that they had not made reasonable efforts to treat their long-standing substance abuse issues.  Mother additionally claims that—even if application of the above-referenced bypass provisions was appropriate in this case—the juvenile court nevertheless erred in refusing to grant her reunification services under a best interest analysis.  Since we conclude that the record sufficiently supports the challenged juvenile court determinations, we deny the petitions.

## I.  BACKGROUND

K.S., the minor who is the subject of these proceedings, was detained by the San Francisco Human Services Agency (Agency) shortly after her birth in January 2017, due to a referral indicating that mother had tested positive for methamphetamines during a recent prenatal visit.  According to the underlying dependency petition—as it was ultimately sustained by the juvenile court—K.S. (the couple's only child in common) was described by subdivisions (b) and (j) of section 300 due to: mother's long history of substance abuse for which she failed to receive treatment; the termination of mother's parental rights with respect to four previous children based on her untreated polysubstance abuse; the parents' history of domestic violence; father's history of substance abuse, for which he failed to seek treatment until June 2017; and the termination of father's parental rights to three other children in 2008.[2]

According to records supplied by the Agency, in 2010 mother gave birth to a daughter, C.S., who was detained after mother and baby tested positive for cocaine at birth.  Mother was found to have an on-going substance abuse problem, a history of psychiatric hospitalizations, and a lack of stable housing.  Reunification services were ordered for mother, including residential drug treatment, individual therapy, a psychological evaluation, and parenting classes.  Unfortunately, those services were terminated as unsuccessful, and mother's parental rights were terminated with respect to

---

[2] Mother and father were reportedly married in December 2015 and were living together at the time K.S. was born.  Father was declared the presumed father of K.S. in February 2017.

C.S. in January 2012. Thereafter, in July 2012, mother's next child, K.G., was detained shortly after birth due to mother's unresolved problems with substance abuse, mental health issues, homelessness, criminality, and child welfare involvement. Mother was bypassed for reunification with respect to K.G., and her parental rights were ultimately terminated. In 2013, mother gave birth to twins—J.S. and R.S.—who were immediately detained due to positive toxicology screens for crack cocaine and marijuana (for mother and both babies) and mother's substance abuse history. Mother was bypassed for reunification with respect to the twins, and her parental rights were terminated in July 2014.

Similarly, father's three older children—K.S. (born June 2004) and twins P.S. and C.S. (born January 2006)—were detained in September 2006 due to their mother's substance abuse and failure to provide for their care. The petitions filed with respect to these minors additionally alleged that father had criminal drug convictions, was incarcerated, and was unable to care for the minors. At a hearing in May 2007, the mother's reunification services were terminated, and father was ordered to engage in reunification efforts, including: refraining from the use of alcohol and illegal substances; random drug testing; successful completion of a program of counseling/psychiatric therapy as recommended after assessment; substance abuse assessment and related treatment; and visitation. However, in September 2007, father's reunification services were terminated after the juvenile court found, by clear and convincing evidence, that father had failed to participate regularly and make substantive progress in the court-ordered services. Father's parental rights with respect to the three minors were then terminated at a February 2008 permanency planning hearing.

In the current case, both parents admitted to their long histories of substance abuse. According to mother, she began abusing alcohol, marijuana, and cocaine at age 12, with her drug of choice being crack cocaine. She also reported a history of

prostitution, criminal behavior, and being " 'out on the street.' "[3] Mother acknowledged that she had never completed a substance abuse program. Nevertheless (and despite her recent positive drug test), mother denied using any illegal substances during her pregnancy, and claimed to have been clean for a year. She further stated that she had matured since her previous children were born, and was ready to get clean. As for father, he acknowledged a thirty-five year history of drug use and an extensive criminal record.[4] He reported smoking marijuana from age 13, starting to abuse other drugs, and becoming an addict. His drug of choice was also crack cocaine. Father additionally stated, however, that he had completed drug court in the past and claimed that he had not abused drugs since graduating from a substance abuse treatment program in 2014. According to father, "he got his life together after seeing that he lost everything he cared about living that way."

The parents also denied domestic violence in their relationship. However, at the time the petition was filed, there was an active restraining order against father, naming

---

[3] Mother's criminal history includes arrests for receiving stolen property, taking a vehicle without consent, and threatening a crime with intent to terrorize (2000); failure to obey a juvenile court order and loitering with the intent to commit prostitution (2001); possession of marijuana for sale (2003); battery on a person and obstructing/resisting a public officer (2008); assault with a deadly weapon (not a firearm) with great bodily injury likely (2008); domestic battery and vandalism (2008); transportation/sale of narcotics (2011); and possession of a controlled substance (2016).

[4] Indeed, father's criminal history spanned almost 30 years, with multiple arrests for possession of narcotics for sale, possession of a controlled substance, and possession of crack cocaine. Recent arrests include petty theft (2010); possession of a controlled substance and violation of probation (2010); second degree robbery, possession of a controlled substance, and trespass (2012); possession of a controlled substance for sale, possession of paraphernalia, and carrying dirk/dagger (2012); burglary, assault with great bodily injury, receiving known stolen property, and committing an offense while on bail (2012); unlawful driving/taking of a vehicle, possession of a controlled substance, and probation violation (2013); second degree burglary, vandalism, and battery (2014); possession of a controlled substance (2015); domestic violence (2015); assault with great bodily injury, possession of a switch blade, and resisting/obstructing police officer/EMT (2016); reckless driving, forgery of registration, driving without a valid license, and receiving stolen property (2016); and petty theft (2016).

mother as the protected person.[5] In addition, mother—who acknowledged a history of domestic violence in previous relationships—had reported domestic violence by father at both a prenatal visit and in a later voicemail to a social worker. On each occasion, she later recanted her story. The record further reflects that domestic violence incidents occurred at the parents' residence on February 2, March 6, and March 27, 2017, after the minor was detained. Overall, the police had responded to that address, which the parents shared with another couple, on ten occasions since October 2016. According to mother's testimony at the June 2017 contested hearing, the police contacts in February and March 2017 were because she was angry that K.S. was removed and was taking it out on father in verbal arguments.

After the filing of the petition in this matter, each parent made some efforts to engage in substance abuse treatment and related services. After a brief stay in a residential program, which mother reported leaving because it was not a good fit for her, mother had been engaged in outpatient substance abuse treatment starting in April 2017. During that same timeframe, she consistently tested negative for drugs and met with an anger management counselor. She also started working with family treatment court.

Father began participating in outpatient substance abuse treatment on May 24, 2017, less than a month before the contested dispositional hearing. During this same period, he also participated in a fatherhood initiative class and signed up for family treatment court. However, since the minor was removed in January, father had only drug tested twice for the Agency, in June, claiming difficulties with transportation due to his disability. At the contested hearing, the social worker testified that she believed father did have access to a car. Specifically, she had seen him drive to visits and had reviewed a March 2017 police report which indicated that father had a car registered in his name. Moreover, although father was drug testing with his doctor on a monthly basis in

---

[5] Although the restraining order was not set to expire until November 2017, the parents went to court and had it lifted in April 2017, while this matter was pending in the juvenile court.

preparation for hip replacement surgery and six negative tests were reported, the social worker did not consider those tests to be random.

Finally, both parents consistently visited with K.S. and were reported to be appropriate and able to meet the minor's needs during visitation. K.S. was generally doing well. However, the social worker testified, based on her experience, that the minor was exhibiting some physical symptoms that were consistent with in utero drug exposure. And, in testimony at the June 2017 contested hearing, mother finally, for the first time, acknowledged that it was possible that she tested positive for drugs during her pregnancy.

At the conclusion of the contested jurisdictional and dispositional hearing on June 14, 2017, the juvenile court found K.S. to be a minor described by subdivisions (b) and (j) of section 300 and declared dependency, removing the minor from the parents' physical custody. Thereafter, while acknowledging the recent steps taken by the parents to address their issues, the court concluded that their efforts were not sufficient to overcome a bypass finding under subdivisions (b)(10) and (b)(11) of section 361.5. It therefore ordered no reunification services for either parent, and set a permanency planning hearing for K.S.

Both parents subsequently filed notices of intent to file writ petitions, and the petitions themselves were filed in July 2017.

## II. DISCUSSION

### A. *Bypass of Reunification Services Under Subdivision (b)(10) of Section 361.5*

#### 1. *Statutory Framework and Standard of Review*

As a general rule, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to "the child and the child's mother and statutorily presumed father . . . ." (§ 361.5, subd. (a).) The purpose of reunification efforts is to "eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 (*Baby Boy H.*).) However, it is also the "intent of the Legislature, especially with regard to young children, . . . that the dependency process proceed with deliberate

6

speed and without undue delay." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151.) Thus, the statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation. (See *Ibid.*) Specifically, section 361.5, subdivision (b), exempts from reunification services "those parents who are unlikely to benefit" from such services or for whom reunification efforts are likely to be "fruitless." (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 474; *Baby Boy H.*, *supra*, 63 Cal.App.4th at p. 478.) Once the juvenile court concludes reunification efforts should not be made in a particular case, it " 'fast-tracks' " the dependent minor to permanency planning so that a permanent out-of-home placement can be developed. (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 838.)

The statutory sections authorizing denial of reunification services are sometimes referred to as "bypass" provisions. (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 821.) In the present case, the juvenile court denied reunification services to the parents based on two such bypass provisions, subdivisions (b)(10) and (b)(11) of section 361.5. Since only one valid ground is necessary to uphold the juvenile court's bypass decision, we will focus here on subdivision (b)(10), under which reunification services need not be provided if the court finds by clear and convincing evidence that "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling . . . and . . . , according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(10).) This subdivision "recognizes the problem of recidivism by the parent despite reunification efforts." (*Baby Boy H.*, *supra*, 63 Cal.App.4th at p. 478.)

The "reasonable effort[s]" necessary to avoid subdivision (b)(10) bypass are not synonymous with " 'cure.' " (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 (*Renee J.*).) They must, however, be more than " 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393-1394.) Moreover, not every

7

"effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.)

We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*).) Under such circumstances, we do not make credibility determinations or reweigh the evidence. (*A. A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.) Rather, we "review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings." (*Ibid.*) In doing so, we are mindful of the higher standard of proof required in the court below when reunification bypass is ordered.

2. *Validity of Mother's Bypass Order*

Mother contends that the juvenile court's order denying her reunification services in this case was not supported by substantial evidence because the record revealed that she was finally making reasonable efforts to treat her, admittedly, long-term problem with substance abuse. Specifically, mother claims that her recent efforts, including finding—without the social worker's assistance—a treatment program that was the right fit for her; providing 14 negative drug tests prior to the dispositional hearing; engaging with an anger management counselor; and positively and consistently visiting with K.S. showed a new maturity and dedication to sober-living that she did not possess during the previous dependencies of the minor's four half-siblings. As such, mother argues, they should be deemed reasonable efforts for purposes of defeating (b)(10) bypass.

While we agree with the juvenile court that mother's recent efforts are certainly laudable, we have no difficulty concluding that substantial evidence supports the court's

8

bypass order with respect to mother. As the juvenile court stated, mother's efforts came extremely late, not only in terms of her many years of addiction, but also in terms of this particular minor. Specifically, mother continued to use drugs on at least one occasion despite knowing she was pregnant with K.S. and did not enter her outpatient treatment program until April 2017, three months after the minor's birth and detention. Moreover, mother refused to admit that she had used methamphetamines during her pregnancy with K.S. up until she gave testimony at the June 2017 contested hearing. Further, the juvenile court expressly found that mother's denial of domestic violence in her relationship with father was not credible and concluded, based upon her observations of mother on the witness stand, that mother remained "in denial of a lot of issues that she needs to work on and face." Under such circumstances, we can find no fault with the juvenile court's observation that "it takes a long time, really, to make reasonable efforts sometimes when you've had such a long history." We see no error.

3. *Validity of Father's Bypass Order*

We next consider father's challenges to the bypass decision made pursuant to subdivision (b)(10) of section 361.5 with respect to his reunification services. Father argues in this court that the Agency failed to prove that he did not make reasonable efforts to treat his problems because it did not present sufficient evidence regarding the bases for the removal of his older children.[6] Father further contends that the court improperly discounted his current efforts, and that, regardless, there was no evidence presented that he had an ongoing issue with substance abuse or incarceration.

It is true that, where there is a lack of information with respect to the circumstances of the prior dependency action, bypass of reunification pursuant to subdivisions (b)(10) or (b)(11) of section 361.5 may not be appropriate. (*In re D.H.* (2014) 230 Cal.App.4th 807, 816.) While we are troubled in this case by the paucity of evidence regarding father's previous dependency action and his efforts at rehabilitation, we nevertheless conclude that the record as it stands is sufficient to uphold the juvenile

---

[6] Mother joins in this argument in her writ petition.

9

court's bypass determination. As discussed above, the petitions involving father's older children stated that father had criminal drug convictions, was incarcerated, and was unable to care for the minors. In the context of this prior dependency father was ordered to engage in reunification efforts, which included refraining from the use of alcohol and illegal substances, random drug testing, and completion of a substance abuse assessment and related treatment. Although incarcerated for a portion of the reunification period, father reportedly attended AA meetings in jail and had at least three months subsequent to his release to engage in additional reunification efforts. Nevertheless, father's services were ultimately terminated due to his failure to participate regularly and make substantive progress. Under such circumstances, we can conclude that the problems which led to the removal of K.S.'s half-siblings included repeated criminality and substance abuse. (See *In re Lana S.* (2012) 207 Cal.App.4th 94, 108 [holding that drug abuse "unquestionably posed a problem" in prior dependency proceedings where it was a "substantial component" of the parent's service plan].)

Although, as father correctly points out, he was not incarcerated during these current proceedings, the record does not support father's related claim that incarceration was no longer an issue for him. Rather, although the social worker did not detail father's arrests between 2006 and 2010—stating only that he had an almost 30 year criminal history—the record does disclose that father was arrested on at least 14 separate occasions between 2010 and 2016, after the removal of his older children in 2006 and as recently as one month prior to K.S.'s birth. It is difficult to argue that this represents a reasonable effort to deal with his criminal recidivism.

With respect to father's efforts to address his long-term substance abuse issue, the juvenile court found as a jurisdictional fact that "the presumed father has a history of substance abuse problems" for which he "failed to seek treatment until June of 2017," a finding no party has challenged before this court. As the juvenile court correctly noted in this case, the parents "have had years, years to address the problems that caused the first removals of their respective children." We thus have no trouble finding support in the record for the court's related conclusion that father's minimal efforts at engaging in

10

substance abuse treatment mere weeks before the June 2017 contested hearing were not a reasonable effort to treat this problem for purposes of subdivision (b)(10) bypass. Finally, while it is true that there is no definitive evidence in this matter that father was currently abusing substances, there are certainly facts in the record from which the juvenile court could reasonably infer a continuing problem, including: father's ongoing criminal lifestyle, in particular an arrest in 2015 for possession of a controlled substance; father's persistent failure to comply with random drug testing since the minor's removal; the long-standing nature of his substance abuse problem; mother's drug use while living with father shortly before the minor's birth; mother's arrest for possession of a controlled substance in 2016; and the requirement of father's doctor that father drug test prior to his anticipated hip replacement surgery.  Under all of these circumstances, we conclude that the juvenile court's decision to bypass reunification for father pursuant to subdivision (b)(10) was sufficiently supported by the evidence.

**B.**      *Best Interests of Minor Pursuant to Section 361.5, Subdivision (c)*

Pursuant to section 361.5, once the juvenile court determines that a parent is described by subdivision (b)(10) of that statute, it shall not order reunification services for that parent "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."  (§ 361.5, subd. (c)(2).)  " 'The concept of a child's best interest " ' "is an elusive guideline that belies rigid definition.  Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult." ' "  (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227 (*William B.*).)  Nevertheless, precedent supplies certain relevant considerations when making a best interests determination.  For instance, "[t]o determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity."  (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116; see also *William B.*, *supra*, 163 Cal.App.4th at p. 1228.)  It is the parent's burden to prove that the minor would benefit from the provision of court-ordered services.  (See *In re Gabriel K.* (2012) 203

11

Cal.App.4th 188, 197.)  We review a juvenile court's best interest determination in this context for abuse of discretion.  (*William B.*, *supra*, 163 Cal.App.4th at p. 1229.)

In the present matter, the juvenile court expressly found that offering reunification services to the parents would not be in K.S.'s best interest.  Mother challenges this finding in her writ petition, claiming that reunification would be in K.S.'s best interest because both parents had been establishing a bond with the minor through consistent and appropriate visitation and were engaging in services to address the Agency's concerns.[7]  In making this argument, mother compares her situation to that of the mother in *In re G.L.* (2014) 222 Cal.App.4th 1153 (*G.L.*), who—despite a long-term substance abuse problem, lengthy criminal history, and failure to reunify with four older children—was offered services in the minor's best interest, a decision which was subsequently upheld on appeal.  (*Id.* at pp. 1156-1157, 1162-1163, 1165-1166.)

We note, however, several crucial distinctions between the mother's situation in *G.L.* and mother's circumstances here.  First, the *G.L.* mother—in addition to positive recent interactions—had primary responsibility for the then-two-year-old minor for the first 5 months of his life.  (*G.L.*, *supra*, 222 Cal.App.4th at p. 1163.)  In obvious contrast, the parents in this case have never parented infant K.S., as she was removed almost immediately after her birth.  Moreover, the juvenile court in *G.L.* was influenced by the fact that the father in that case was being offered services independent of the mother.  (*Ibid*.)  Thus, in *G.L.*, unlike this case, there was no possibility of expedited finality for the young minor.  The most important distinction between the two cases, though, is their differing procedural postures.  In *G.L.*, the juvenile court found reunification efforts to be in the minor's best interest, and the appellate court concluded that this determination did not constitute an abuse of discretion.  In these proceedings, in contrast, the juvenile court expressly found that reunification would *not* be in the minor's interest.  To reverse this

---

[7] The Agency asserts that mother has forfeited this argument by failing to raise it in the juvenile court.  Mother's counsel, however, did argue generally that mother had changed and should be given a chance to parent the minor, and the juvenile court expressly found that reunification was not in K.S.'s best interest based on the "evidence presented for both mother and father."  On this basis, we will reach the issue.

determination, we would therefore be required to conclude that the juvenile court had abused its discretion. This we decline to do.

Indeed—although we recognize and applaud mother's recent efforts in this case—given the extent of her substance abuse history, her clear resistance to prior court-ordered treatment for this and related issues, her relatively recent engagement in services, and the young age of the minor, we would be extremely hard pressed to find error on the part of the court below based on its analysis of K.S.'s best interest. As the *G.L.* court noted in upholding the best interest determination of the juvenile court in that case, the fact "[t]hat there is evidence in the record supporting the opposite finding . . . does not mean the court abused its discretion in finding it was in G.L.'s best interests to reunify with [his mother]." (*G.L.*, *supra*, 222 Cal.App.4th at p. 1166.) Similarly, the contrary evidence mother marshals in this case does little to persuade us that the juvenile court abused its discretion in reaching the opposite conclusion from that which she seeks.

While, based on our various standards of review, we affirm the juvenile court's bypass determinations in this matter, we take this opportunity to express our continued frustration at the state of the evidentiary record regularly provided to us by many child welfare departments in bypass cases under subdivisions (b)(10) and (b)(11) of section 361.5. It is true that, pursuant to these subdivisions, a prior termination of reunification services or parental rights is required, and thus court orders memorializing those outcomes are undoubtedly useful in a later dependency matter where bypass is requested. However, the existence of these readily ascertainable facts are rarely the focus of any bypass dispute. Rather, parents invariably argue that they have since made reasonable efforts to treat the problems that led to the previous sibling removal. (See § 361.5, subd. (b)(10) & (11).) In order to meet its burden to establish, by clear and convincing evidence, a lack of reasonable efforts in this regard, child welfare workers must focus on the facts underlying the previous dependency action and it resolution, as well as on any efforts made by the parent *since the sibling removal*. (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 98.) In particular, copies of all relevant reports, especially dispositional reports and the reports upon which any terminations of services were based, should be attached to the

13

social worker's dispositional report in the current matter to provide necessary background.  Moreover, at any contested hearing seeking bypass, the testifying social worker should have thoroughly reviewed the prior records, interviewed the parents regarding past efforts, and be able to speak authoritatively as to why the parent at issue has failed to make reasonable efforts during the relevant timeframe.

We agree wholeheartedly with petitioners' position that "[t]he failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case."  (*Renee J.*, *supra*, 96 Cal.App.4th at p. 1464; see also *In re Harmony B.* (2005) 125 Cal.App.4th 831, 842 ["[t]he inclusion of the 'no-reasonable effort' clause in the statute provides a means of mitigating an otherwise harsh rule that would allow the court to deny services simply on a finding that services had been terminated as to an earlier child when the parent had in fact, in the meantime, worked toward correcting the underlying problems"].)  Such a severe impairment of parental rights should only be available where it is clear that parents continue to struggle with the issues that resulted in the loss of their previous children.  Conversely, where substantial evidence supporting bypass is available, it would indeed be a tragedy to delay permanency for the dependent child at issue—the very reason these bypass provisions exist—simply because the relevant child welfare agency failed to do its job.

## III.  DISPOSITION

The consolidated petitions are denied on their merits.  (§ 366.26, subd. (l)(1)(C), (4)(B).)  Because the permanency planning hearing in this matter is set for October 12, 2017, this opinion is final as to this court immediately.  (Rules 8.452(i), 8.490(b)(2)(A).)

 

 

 

_____
KENNEDY, J.*

We concur:

_____
RIVERA, ACTING P. J.

_____
STREETER, J.

*Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A151627 *Jennifer S. v. Superior Court*

Trial Court:                        City and County of San Francisco Superior Court


Trial Judge:                        Hon. Susan M. Breall


Counsel for Petitioner K.S.          Julia Ten Eyck
and Appellant:


Counsel for Petitioner J.S           Mark Wasacz
and Appellant:                       Kristin E. Walczak


Counsel for Respondent:              Dennis J. Herrera
                                     City Attorney
                                     Kimiko Burton
                                     Lead Attorney
                                     Jeremy Sugerman
                                     Ori Edelstein
                                     Gordon-Creed, Kelley Holl and Sugerman, LLP


A151627 *Jennifer S. v. Superior Court*