[No. B137539. Second Dist., Div. Four. May 22, 2000.]

MARLENE M., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

**COUNSEL**

Richard D. Bloom for Petitioner.

No appearance for Respondent.

Lloyd W. Pellman, County Counsel, and Jacklyn K. Louie, Assistant County Counsel, for Real Party in Interest.

## OPINION

**HASTINGS, Acting P. J.**—Petitioner Marlene M., mother of Michael M., petitions for relief from denial of family reunification services and setting of a Welfare and Institutions Code section 366.26 hearing in this dependency action.[1] We conclude the trial court did not err or abuse its discretion and we deny the request for extraordinary relief.

### FACTS

Petitioner is the mother of Michael M. (Michael), born April 15, 1999. She is also the mother of four other children: Alexandra M., born in 1992; Lorraine M., born in 1993; William M., born in 1995; and Brian M., born in December 1997.[2] These other children were detained by the Los Angeles County Department of Children and Family Services (DCFS) on February 23, 1998, due to the failure of petitioner to keep the physical environment of the home clean and safe and her failure to provide the minors with food and other basic necessities of life. The four minors were placed with the paternal grandparents, Justina and Lex M.

Prior to the birth of Michael, DCFS caseworker (CSW) Jason C. Jacobs repeatedly inquired of petitioner whether she was pregnant and whether she was being followed by a doctor. She answered that she had been seen by her brother-in-law, a nurse's assistant, and that she was not pregnant but was suffering from a "water tumor." Michael was born at 11:00 p.m. on April 15, 1999, as a full-term healthy baby with no signs of drug exposure.

The next day, CSW Jacobs spoke to petitioner and inquired how she could not have known she was pregnant. She responded: "I had no idea I was pregnant. . . . I know my stomach was getting big but I thought it was constipation or something." Jacobs also asked petitioner for the identity of the father but she was unable to confirm the identity. She told Jacobs that she probably became pregnant when she was living in Arizona: "I was lonely and looking for companionship. . . . I made one minor mistake." Jacobs also spoke with Justina M., who advised Jacobs that she was upset with petitioner having a child from another man while petitioner was still married to her son. Justina M. was concerned about petitioner's mental capacity and believed that petitioner was in need of "some type of psychological counseling/evaluation. . . . I am scared about the visitation (with all minors) . . . she is not in her right mind."

---

[1] All further references will be to the Welfare and Institutions Code unless otherwise noted.

[2] The father of these four children was identified as Alexito M., currently incarcerated. These minors are not subjects of this proceeding.

Michael was detained by DCFS on April 16, 1999, and a detention hearing was conducted on April 21, 1999. The court received a report from DCFS which contained the above information and also reported that petitioner had failed to complete family reunification services ordered on March 26, 1998, in connection with the detention of the four half siblings. It also reflected that petitioner had been seen by counselor Frederick Hoil while she lived in Arizona and that Hoil felt petitioner was "developmentally disabled." The report concluded that petitioner was "without suitable residence [and] a stable source of income." It suggested referrals for parent education and individual counseling. Petitioner was present at the hearing and counsel was appointed to represent her. Michael was ordered detained in shelter care with monitored visitation between petitioner and Michael, and DCFS was directed to provide family reunification services to petitioner and Michael. Counsel appointed to represent petitioner objected to any psychiatric evaluation of petitioner and to DCFS's interviewing her for the pretrial resolution conference (PRC) which was set for June 10, 1999. Michael was placed in the foster home of Dalila R.

The DCFS report prepared for the PRC hearing set for June 10, 1999, noted that petitioner had yet to comply with "court orders to secure appropriate residence and to complete individual counseling." Petitioner had presented for voluntary evaluation on May 27, 1999, at the California Family Health Network with Joshua Dellago, but no report was yet available. The report also suggested that "a 730 evaluation be ordered in order to determine [petitioner's] ability to care for the minors."[3] At the hearing, counsel for petitioner agreed that an evaluation would be helpful and asked that one be ordered and a report prepared for the contested jurisdiction and disposition hearing which was scheduled for September 15, 1999.[4]

DCFS filed a report for the September 15 hearing to which was attached a copy of an evaluation by Dr. Ronald R. Fairbanks and a copy of a "Confidential Psychological Assessment" by Christine Pennewaert, Ph.D., each relating to petitioner. DCFS recommended that Michael be declared a dependent of the court, that petitioner receive family reunification services, and that she "complete a psychotherapeutic/psychiatric program which would address the issues found in Dr. Ronald Fairbanks's 730 evaluation."

In the evaluation, Dr. Fairbanks addressed petitioner's psychological profile and concluded that it was "very close to being a 4-9 profile. 4-9 profile

[3]The number 730 references Evidence Code section 730, which allows the trial court to "appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required."

[4]A contested section 366.22 hearing was scheduled for the same date regarding the other four minors.

individuals tend to have anti-social values. Substance abuse is very likely with this profile. One of the major features of this profile is that the person has significant low frustration tolerance and are [*sic*] extremely irritable. At the same time they are rather energetic and tend to be excitement seekers. Further analysis of the profile indicates an extremely significant impulse control problem. This is not positive for good parenting since it would imply that she doesn't think much about doing things before she does them. There is also significant anti-authoritarian anger. With this being high as well as the later scale, the overly controlled hostility scale being elevated, the examiner would say that the likelihood of anger and violence in the presence of her children is very high. *The major scale used for evaluating potential for progress in therapy was very low indicating it is very unlikely she will benefit much from therapy in the future.*" (Italics added.) In his conclusions and recommendations, he found that petitioner "is a very impulsive woman with likely paranoid schizophrenia and likely denial of at least past substance abuse. With these factors in the works, the examiner would say that she presents as a risk to her children." He concluded that she had "existing emotional or mental problems which renders [her] incapable of safely parenting the minor[.]" Under recommendations for reunification he suggested that petitioner "have at least six months to a year of psychotherapy and psychiatric consultation." His recommendations for therapy included "psychotherapy and psychiatric consultation with possible medication, but also she likely needs to be involved in a domestic violence program. She admits violence and the profile she produced is somewhat consistent with being a battered woman." He also suggested that she be "re-evaluated after some significant treatment so that it can be documented that she has made some progress."

At the hearing on September 15, the court first entertained the section 366.22 hearing involving Michael's four half siblings. It terminated reunification services and ordered the children into long-term foster care. The court then entertained the jurisdictional hearing for Michael. Without objection, it admitted the DCFS reports of April 21, June 10 and September 15, 1999, and took judicial notice of the court file relating to proceedings involving Michael's four half siblings. Counsel for DCFS also advised the court that DCFS was now recommending no family reunification services be provided to petitioner. After argument over admission of Dr. Fairbanks's report, the court admitted it into evidence.[5] After argument, the court sustained count b-1, as amended, count b-2, as amended, count g-1, as amended, and count j-1, amended to match count b-2.[6] The remaining counts were dismissed. The court found that Michael is a person described by section 300, subdivisions (b), (g) and (j).

---

[5]No issue is raised in the petition regarding this ruling.

[6]Count g-1 involved allegations relating to Michael's father.

Count b-1, as amended, reads: "Child Michael M[.]'s mother Marlene M[.] suffers from depression and mild panic attacks and moderate emotional disturbance which limit her ability to care for Michael. Further, such limitations on the part of the child's mother endangers his physical and emotional health and safety and places the child at risk of serious physical and emotional damage."

Count b-2, as amended, reads: "Child Michael M[.]'s siblings, Alexandra, Lorraine, William and Brian M[.] are current dependents of the Juvenile Court due to mother Marlene M[.]'s severe neglect. Further, the conduct of the child's mother is endangering to the siblings in that she has failed to reunify with the siblings and has failed to comply with the prior Court Orders regarding individual counseling to address petition issues and psychiatric issues. Further, such acts/conduct on the part of the child's mother endanger the child's physical and emotional health and safety and places the child at risk of serious physical harm and emotional damage."

The court then turned to the issue of reunification services and the following exchange occurred:

"THE COURT: . . .

"Now regarding Michael, the recommendation is to terminate—is to deny reunification services. The mother was not previously noticed of that. Today's hearing was the first time any counsel was aware of that.

"Mr. Bloom [counsel for petitioner], how do you wish to proceed?

"MR. BLOOM: Well, I would like to proceed with disposition and—

"THE COURT: Do you want to do it today by argument or do you want to set it for a contested hearing?

"MR. BLOOM: If the court is willing to entertain a no FR recommendation even at the last moment, I would ask to put it over for a contested hearing.

"THE COURT: I am going to continue it since you didn't have notice and the code is very clear that no FR recommendation, the notice has to be—is very clear as to the notice that is needed. So the mother is now on notice.

"We will continue the matter for contested disposition hearing. The Department is to continue to work with the mother regarding the referrals to the programs which are necessary and for the contested dispo.

"One week in advance I would like a supplemental disposition report as to the mother's progress in any programs and her visitation with Michael.

"December 7 will be the contested disposition hearing. The worker is on call. The mother is ordered to return on that date without any further notice."

DCFS filed a supplemental report for the disposition hearing. It noted that Michael had been placed with the same foster mother, Dalila R., for seven months and that "[t]he minor has clearly bonded with Dalila and sees her as his primary source of support." The foster mother indicated a strong desire to adopt Michael. An adoption assessment was completed and Michael was found acceptable for adoptive planning with the foster mother. With regard to petitioner, the report stated that she had her first counseling session on September 10, 1999, with Dr. Lee Gomberg, but that she cancelled sessions for September 24 and October 22 due to a sprained ankle. She attended a session on November 5 but missed a session on November 19, without calling. On November 27, Dr. Gomberg told the CSW that if he did not hear from petitioner by the end of that week he would close her case. The CSW also reported that on November 15 petitioner left the Christ Extended Hand Women's Shelter because of a violation of the rules and policies of the shelter. This was the second time she had left the shelter, the first time being on July 9, 1999 "due to inappropriate behavior with a male friend and unsanitary living conditions." The report concluded that petitioner had failed to comply with court-ordered counseling and to secure a stable and healthy living environment. The report also noted that while petitioner did visit with Michael on occasion, she also missed a number of scheduled visits. The report recommended that "Family Reunification Services for mother be terminated, that the minor receive Permanent Placement Services, that in 120 days a hearing be set pursuant to a WIC 366.26 on 4-7-00 and that all other orders not in conflict shall remain in full force and effect."

At the disposition hearing, counsel for petitioner offered to stipulate that if petitioner were called to the stand "she would make the following statements: [¶] With regard to the statements in the reports stating that she would visit—and, like, visit two weeks and then miss two weeks, that statement is incorrect. She did miss a few visits with Michael because the pastor at her residence, Christ's Extended Hand Church, told her that she had to attend meetings at that program, when the requirement to attend those meetings conflicted with visiting Michael. She left the program. That was one of the reasons she left the Christ Extended Hand Program. [¶] Usually, and regularly she visited with Michael on Wednesdays and Fridays for two hours each visit. She believes that those visits went well and she bases that belief

on the fact that Michael would smile when she would arrive and during the visits, that she interacted with Michael during the visits, which included but wasn't limited to hugging and kissing Michael." The stipulation was agreed to by all counsel and accepted by the court. The court then entertained argument. DCFS argued that no reunification should be provided pursuant to section 361.5, subdivision (b)(10). Counsel for petitioner argued that section 361.5, subdivision (b)(10) should not apply because family reunification services for Michael's siblings were still being provided at the time Michael's petition was filed. The court disagreed and ordered that reunification services be denied to petitioner. It set a section 366.26 hearing for June 6, 2000.

On December 14, 1999, petitioner filed a "Notice of Intent to File Writ Petition and Request for Record, Rule 39.1B." On March 23, 2000, petitioner filed her "Petition for Extraordinary Writ." DCFS filed an answer to the petition and we set the matter for hearing on May 18, 2000. The parties waived oral argument.

### DISCUSSION

█ As pertinent to the facts of this case, in 1999, section 361.5 subdivision (b)(10) provided:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶]

"(10) That (A) the court ordered a permanent plan of adoption, guardianship, or long-term foster care for any siblings or half-siblings of the child because the parent or guardian failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) . . . ."

Petitioner challenges the trial court's application of section 361.5, subdivision (b)(10) based on three related arguments: first, that the petition relating to Michael was filed *before* family reunification services were ordered terminated in connection with the other four siblings; second she contends that she received inadequate notice that DCFS would seek to preclude reunification services pursuant to section 361.5, subdivision (b)(10); and finally, she suggests that she qualifies within the terms of the

Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and failure to provide reunification services violates her rights under that act.[7]

The facts are undisputed that on March 26, 1998, Michael's four half siblings were detained pursuant to section 361 and on September 15, 1999, reunification services being provided to petitioner in connection with the half siblings were terminated and they were placed in long-term foster care. Thus, when the court entertained the disposition hearing on December 7, 1999, the predicate facts existed for application of section 361.5, subdivision (b)(10).

There is nothing within the language of section 361.5 to suggest that it applies only when the subject petition is filed *after* termination of family reunification services in connection with other siblings or half siblings. In fact, a similar argument was rejected in *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 488-489 [83 Cal.Rptr.2d 777] (hereafter *Riverside County*): "Here, there is no impediment to a construction of section 361.5, subdivision (b)(10) which permits its application to a parent whose rights to another child are terminated after the subject child is detained but before a disposition of that minor is made. The premise for the subdivision is clear: that a parent who has failed in one course of reunification services, or who has suffered the drastic step of termination of parental rights, is unlikely to succeed with a new round of services. [Citation.] The reasonableness of this premise is buttressed by the fact that subdivision (b)(10) does not have any effect unless the state had found it necessary to make the *subject* minor a dependent child too. Thus, built into the statute is not only one prior *completed* parental failure, but a *new, additional* parental failure to provide adequate care. With this in mind, it should make no difference whether Mother's parental rights to Rosemary were terminated in September (as actually happened), or in February (before Russell was detained.) The fact is, she has failed to reunify with one child despite the active threat of permanent loss and has failed to make such improvements as would make the subject minor safe in her custody." (Original italics.)[8]

██ Petitioner's notice argument is twofold. The first argument is constructed based upon section 361.5, subdivision (a)(2), limiting reunification

---

[7]The third argument is quickly disposed of: petitioner made no such argument in the trial court. Therefore, we will not consider the issue at this level. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1152 [94 Cal.Rptr.2d 693]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780].)

[8]Petitioner seeks to distinguish this case from *Riverside County* on the basis that in *Riverside County* the mother's parental rights had been terminated prior to denial of services for the mother and she was also incarcerated at the time of the hearing denying her reunification services. We find these distinctions to be irrelevant to the concept of section 361.5, subdivision (b)(10), as explained in *Riverside County*.

services to six months for a child under three, and the notice requirements within California Rules of Court, rules 1412(j) and (k), and 1441(a).[9] She argues: "In this case, [petitioner] was not informed at the detention hearing that she would only have six months to reunify with Michael." The short answer to this argument is that the court applied section 361.5, subdivision (b)(10) and ordered that *no* reunification services would be supplied to petitioner.[10]

Petitioner also argues that it was not until the hearing on September 15, 1999, that she received notice that DCFS would seek to preclude her from having reunification services in connection with Michael. The issue of notice was raised by the court at that time, not by petitioner, and the court ordered that the disposition hearing be continued to December 7, 1999. The record reflects no objection by petitioner to proceeding with the hearing on December 7, 1999, based on the lack of notice she is now asserting. She has therefore waived the issue. (*In re Lukas B.*, *supra*, 79 Cal.App.4th at p. 1152.)

■ Finally, in the alternative, petitioner contends that "the court did not have sufficient evidence before it to deny family reunification services under section 361.5(b)(10)." As previously noted, the uncontradicted facts placed this case directly within section 361.5, subdivision (b)(10). However, the court has discretion not to apply this section and to grant reunification services: "Under section 361.5, subdivision (c), services may be offered

---

[9]California Rules of Court, rule 1412(j) and (k) are not directly applicable to the facts of this case but specifically refer to various "rights" such as the right to assert the privilege against self-incrimination, the right to confront and cross-examine witnesses, the right to use the process of the court to bring in witnesses, and the right to present evidence to the court. (Rule 1412(j), pars. (1)-(4).) As applicable, rule 1441(a) provides: "At the beginning of the initial hearing on the petition, whether the child is detained or not detained, the court shall give the advice required by rule 1412(j) and shall inform each parent or guardian present, and the child, if present: [¶] (1) Of the contents of the petition; [¶] (2) Of the nature of, and possible consequences of, juvenile court proceedings; [¶] (3) If the child has been taken into custody, of the reasons for the initial detention and the purpose and scope of the detention hearing. [¶] (4) If the petition is sustained and the child is declared a dependent of the court and removed from the custody of the parent or guardian, that court-ordered reunification services shall not exceed 12 months for a child aged three or over at the time of the initial removal, and shall not exceed six months for a child who was under the age of three at the time of the initial removal if the parent or guardian fails to participate regularly in any court-ordered treatment program."

[10]At the hearing petitioner was represented by counsel, who waived reading of petitioner's "statement of rights." "MR. BLOOM: Richard Bloom specially appearing for Larry Aufill who's seeking appointment to represent the mother. She's present. He represents her as to the other minors. [¶] THE COURT: He will be appointed. [¶] It's here for initial arraignment and detention hearing. On behalf of your client, waive further reading of the petition, statement of rights? [¶] MR. BLOOM: Yes, enter denial." It is not clear to this court whether this waiver would also extend to advisement of the information within California Rules of Court, rule 1441.

even to a parent who falls under subdivision (b)(10) if the court finds, by clear and convincing evidence, that it is in the best interests of the *minor* to do so." (*Riverside County, supra,* 71 Cal.App.4th at p. 492, fn. omitted, original italics.)

In this instance, the court found that it could not make such a finding:

"The mother is in and out of programs, although she did parenting classes regarding individual therapy, the disposition case plan from the sibling's case is very clear that the mother was ordered to do individual therapy to address the case issues and psychiatric issues. And Doctor Fairbank's [*sic*] report is clear that she still is in the same exact position that she started in 21 months ago when the other children were detained.

"She even in the last two months has not been going to her therapy and not addressing the issues that are needed to reasonably treat the problem that's led to removal of the half siblings.

"The court cannot find by clear and convincing evidence that it's in the best interests of Michael that reunification services be granted. The mother's compliance has been sporadic, and regarding whether the fact that the children—siblings went to a permanent plan after or before the filing of a petition on Michael, that's really not at issue because the mother at this time when I have to decide whether to grant her reunification services, has had 21 months of reunification services. Not only did she have eighteen months of it for the other children, leading up to September 15th, but she continues to have reunification services for this child during the last three months.

"She has received 21 months of reunification services from the Department and that is what is at issue here, is whether the mother has had an opportunity to reunify and whether the failure to reunify shows that it's in this child's best interests to have permanency in his life at this time.

"So the mother is denied reunification services under 361.5(b)(10)."

The court's determination is supported by the evidence. Dr. Fairbanks's report recommends that petitioner receive between six months to one year of psychotherapy and psychiatric consultation and that she then be reevaluated to determine whether she has made any progress. While petitioner began therapy in September, as of the disposition hearing, she had failed to attend many of the sessions and was considered being dropped from treatment. Thus, the court could conclude that at least six more months to one year of treatment was necessary before reevaluation.

The intent of the Legislature, especially with regard to young children, is that the dependency process proceed with deliberate speed and without undue delay. (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 193 [90 Cal.Rptr.2d 134]; *Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1241 [66 Cal.Rptr.2d 343].) Section 361.5, subdivision (b), is part and parcel of the legislative scheme and recognizes that there are cases where delay attributed to reunification services is more detrimental to the minor than the competing policy of reunification. (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 474 [78 Cal.Rptr.2d 110].) We conclude that the trial court did not abuse its discretion in concluding that no reunification services be provided to petitioner.

DISPOSITION

The petition for extraordinary writ is denied.

Curry, J., and Rubin, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.