Filed 6/25/14  T.G. v. Super. Ct. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| T.G.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF VENTURA COUNTY,<br><br>    Respondent;<br><br>VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | 2d Civil No. B255128<br>(Super. Ct. No. J069819)<br>(Ventura County) |

T.G., the mother of Z.A., an infant, files a petition for extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456) challenging orders of the juvenile court which bypassed family reunification services and set a Welfare and Institutions Code section 366.26[1] hearing to consider termination of her parental rights.  We conclude, among other things, that the trial court did not err by ordering family reunification services to be bypassed.  (§ 361.5, subd. (b)(10), (13).)  We deny the petition.

---

[1] All references are to the Welfare and Institutions Code unless otherwise stated.

FACTS

On January 14, 2014, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition (§ 300) alleging T.G. has a history of substance abuse which includes the use of methamphetamine. T.G. was arrested for possession of a controlled substance and a "smoking device" on October 17, 2013. She gave birth to Z.A. in January 2014 while she was incarcerated. HSA said her substance abuse problems, her "history of mental illness," and her "criminal lifestyle" interfere with her ability "to provide care and support" for the infant.

HSA noted that T.G. "has a history of failing to provide care and support" for her other children. Three of them had been declared to be dependent children under section 300 by the juvenile court.

C.M., T.G.'s daughter, was declared a dependent of the juvenile court on March 17, 2009, because of T.G.'s "chronic substance abuse and incarceration." HSA provided services to T.G., but she "could not maintain her sobriety and a legal guardianship was created in . . . 2009."

D.D., T.G.'s son, was declared a dependent of the juvenile court because of her "incarceration" and "substance abuse." On December 1, 2008, reunification services were terminated for T.G.

In 1997, M.M., T.G.'s son, tested positive for cocaine "at the time of his birth." He remains in "long term foster care." HSA represented to the court that reunification services for this child "were just terminated September 3rd of 2013."

On January 15, 2014, HSA filed a detention report recommending that infant Z.A. "remain detained and that the matter be set for a Jurisdiction and Disposition hearing." The trial court ordered the child to be "detained in foster care." It said, "It is contrary to the child's welfare to continue in the home of the parents."

On February 5, 2014, HSA provided a supervised visit between T.G. and the infant.

On March 18, 2014, HSA filed a jurisdiction/disposition report. It said that returning the child to T.G. "would create a substantial risk" and would be detrimental to

2

the child. It noted that T.G. had served prison terms in 1999, 2002 and 2008, and that in 2010, she was incarcerated for a parole violation. "Within the last 20 years the mother has also been sentenced to serve county jail time on 11 separate[] occasions . . . ." "[B]etween . . . 11/28/1993 through 10/17/2013," she "had a total of 14 criminal charges related to Possession of a Controlled Substance, 12 arrests for Under the Influence of a Controlled Substance, 3 charges related to being in possession of drug paraphernalia, and 3 charges related to Driving Under the Influence of Drugs or Alcohol."

HSA said T.G. "has not demonstrated an ability to actively re-shape her life." T.G. has not undertaken efforts for "development strategies for long term sobriety" and has not developed "strategies" for leading "a crime free life." It noted that she has an "active warrant" for her arrest "from Riverside County at this time." It said that "[t]here is overwhelming evidence to justify Family Reunification Services being bypassed for the mother" under section 361.5, subdivision (b)(10) and (13).

At the March 18 hearing, T.G. testified Z.A. was born while she was in custody. T.G. was released on February 3 and was on probation. After her release, she went to the Prototypes Womens Center, a rehabilitation and treatment program. She previously consented to a guardianship for C.M., her other daughter, because she felt it was in the child's "best interest" to be in a "drug-free environment." She said, "I couldn't do it at that point in time." She previously attended the program at Prototypes because she "needed to get off of parole." She said, "I didn't go in there because I wanted treatment. . . . The reason why I went into Prototypes this time is because . . . I'm tired of the lifestyle that I've been living." She said her mental health conditions include "PTSD, anxiety and [she is] bipolar." She takes medications for these conditions, has "one-on-one therapy," and expects to start part-time employment next month.

On cross-examination, T.G. said she left Prototypes in January 2013 and was arrested for possession of methamphetamine in October 2013. She told others the drugs belonged to her niece because "[she] didn't want people to know that [she] was using drugs again." She used drugs "off and on for three months" starting in July 2013.

3

HSA's counsel asked the trial court to consider T.G.'s testimony as an admission that she had been using drugs while she was pregnant with Z.A.

The trial court found that T.G. "has a history of failing to provide care and support to her children." It found she has "a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition." It ordered that "Family Reunification Services shall not be offered to [T.G.]."

DISCUSSION

T.G. contends the trial court should have ordered HSA to provide family reunification services. She claims the statutory provisions allowing family reunification services to be bypassed did not apply to her because of her current participation in rehabilitation programs. We disagree.

We review the evidence supporting the findings and orders. (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241.) "'Where the trial court . . . has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.'" (*Ibid.*) We do not weigh the evidence or decide credibility issues. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.)

"When a child is removed from parental custody, the juvenile court must order reunification services to assist the parents in reuniting with the child." (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) "However, if certain of the circumstances set forth in section 361.5, subdivision (b), are established, 'the general rule favoring reunification is replaced by a legislative assumption that offering [reunification] services would be an unwise use of governmental resources.'" (*Ibid.*) This provision "is part and parcel of the legislative scheme and recognizes that there are cases where delay attributed to reunification services is more detrimental to the minor than the competing policy of reunification." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151.)

Section 361.5 subdivision (b)(10) provides, in relevant part, that reunification services do not have to be provided where "the court ordered termination of

reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and . . . this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal . . . ."  (§ 361.5, subd. (b)(10).)

The trial court could reasonably find T.G. fell within this provision. Reunification services were terminated in the prior dependency case involving her son D.D. on December 1, 2008.  T.G. has not shown that she made a reasonable effort to treat the problems that led to that removal.  D.D. was declared a dependent child because of T.G.'s incarceration and substance abuse.  T.G. gave birth to Z.A. while she was incarcerated for possession of a controlled substance and a "smoking device."  T.G.'s testimony shows that she had used drugs "off and on for three months" starting in July 2013.  HSA noted that this occurred during her pregnancy with Z.A.

HSA said T.G. had a long-term drug abuse problem that had a detrimental impact on all her children.  In 1997, her son M.M. tested positive for cocaine "at the time of his birth."  Her daughter C.M. was declared a dependent child of the juvenile court because of T.G.'s "chronic substance abuse and incarceration."  HSA said her long history of criminal convictions and prison terms put all her children at risk.

HSA provided services to T.G. for the dependency case involving C.M. But T.G. did not benefit from those services because she "could not maintain her sobriety."  She did not benefit from the services provided to her in the prior dependency cases involving her other two older children.  T.G. admitted that her prior entry in the Prototypes program in 2012 and 2013 was not a serious attempt to obtain treatment.  She said, "I didn't go there because I wanted treatment."  She left that program in January 2013.  She began using drugs in July 2013, and was arrested for drug possession in October 2013.

The trial court recognized that T.G.'s testimony showed she decided to again enter the Prototypes program.  But that occurred in February 2014 after she was released from jail.  The juvenile court hearing was March 18, 2014.  HSA noted her

5

efforts in this very short period were not a demonstration of her "ability to actively re-shape her life." (*K.C. v. Superior Court*, *supra*, 182 Cal.App.4th at p. 1393 ["To be reasonable, the parent's efforts must be more that 'lackadaisical or half-hearted'"].) HSA said T.G. had not shown "development strategies for long term sobriety" given her long history of drug abuse.

The juvenile court said, "[O]ne should never give up hope in any individual." But in denying reunification services, it noted that this is "[T.G.'s] fourth entry into the dependency system with this fourth child." The credibility of her testimony about her intent to change her life was a matter exclusively for the trial court.

In addition, section 361.5 subdivision (b)(13) bypasses reunification services for a parent with a "history of extensive, abusive, and chronic use of drugs [who] has resisted prior court-ordered treatment" within three years prior to the filing of the current petition. The trial court found T.G. also fell within this bypass provision. T.G. does not cite to the record. She has not shown a lack of evidence to support the findings and has not shown the court abused its discretion.

We have reviewed T.G.'s remaining contentions and we conclude she has not shown trial court error.

The petition is denied.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

6

Bruce A. Young, Judge

Superior Court County of Ventura

_____

T.G., in pro. per., for Petitioner.


No appearance for Respondent.


Leroy Smith, County Counsel, Linda Stevenson, Assistant County Counsel, for Real Party in Interest.