Filed 2/24/21  T.K. v. Super. Ct. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| T.K., | A161671 |
| Petitioner, | (Contra Costa County |
| v. | Super. Ct. No. J2000584) |
| THE SUPERIOR COURT OF CONTRA COSTA COUNTY, | |
| Respondent, | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, et al., | |
| Real Parties in Interest. | |

T.K. (mother)[1] seeks extraordinary writ relief from a December 17, 2020 order that denied her reunification services for her son Z.K. (the child) and set a hearing to consider termination of her parental rights and the child's permanent placement under Welfare and

---

[1]     The child's father is not a party to this writ proceeding.

1

Institutions Code section 366.26.[2]  Pending our resolution of the petition, mother requests a temporary stay of the section 366.26 hearing set for April 15, 2021.  Real party in interest Contra Costa County Children and Family Services Bureau (agency) opposes the petition.

Mother challenges the juvenile court's denial of reunification services under section 361.5, subdivisions (b)(10) and (b)(11).   Under this statute, in pertinent part, the court "need not" provide reunification services for a child when a parent's reunification services or parental rights have been terminated in an earlier proceeding concerning a half-sibling and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal" of the half-sibling.  (*Id.*, subs. (b)(10) & (11).)  Once a court has found that a parent is described in subdivision (b)(10) or subdivision (b)(11) of section 361.5, it "shall not order reunification" for the parent unless it further "finds, by clear and convincing evidence, that reunification is in the best interest of the child."  (*Id.*, subd. (c)(2).)    Here, the juvenile court found mother was a person described in subdivisions (b)(10) and (b)(11) of section 361.5, but it did not find that reunification would be in the best interest of Z.K.  Therefore, mother's request for reunification services was denied.  We deny the petition for an extraordinary writ on the merits and deny as moot the related request for a temporary stay of the section 366.26 hearing.

---

[2]    All further undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2020 mother gave birth to the child and both tested positive for "methamphetamines and opioids." Due to safety concerns and mother's substance use, the child was placed in protective custody. That same month, the agency filed an amended section 300 petition asking the court to assume dependency jurisdiction over the child. The amended petition alleged mother failed to protect Z.K. by placing him at substantial risk of physical harm because she: (1) had a serious and chronic substance abuse problem that affected her ability to parent the child, and (2) had untreated mental health issues (anxiety and bi-polar disorder diagnosed in 2011 for which she stopped taking medication and which caused constantly changing moods) that impaired her ability to provide adequate care for the child. (§ 300, subd. (b)).

The amended petition further alleged Z.K. was at substantial risk of abuse or neglect because mother previously abused or neglected two other children (the child's half-siblings N.K. and D.K.) and failed to reunify with them due to her substance abuse problem. (§ 300, subd. (j)). Mother's reunification services concerning N.K. were terminated in September 2011, her parental rights were terminated in October 2012, and an adoption was finalized in July 2013. During the juvenile dependency concerning D.K., mother's reunification services were bypassed in September 2011 and legal and physical custody was granted to D.K.'s father in March 2012.

The agency submitted a report for the October 30, 2020 hearing to determine detention and jurisdiction over Z.K. The agency social worker reported both mother and child tested positive for methamphetamines and opioids; the child suffered from fevers that

3

were a symptom of withdrawal; and mother had multiple abrasions and scratches on her arms that "appeared to be common symptoms of people who abuse [m]ethamphetamine and 'pick' at their skin." Mother stated she did not know how she tested positive for methamphetamine because she had not used the drug since 2015. She became addicted to Norco in 2016 and later took Suboxone in 2017 when she became pregnant with Z.K.'s half-sibling L.R. Mother currently used Suboxone and no other substances. In regards to her mental health, mother stated she had been diagnosed as suffering from "high anxiety" and bi-polar disorder in 2011 and had not taken her prescribed medication for a long enough period for it to work due to her " 'immaturity' " (mother's word). Mother felt her bi-polar disorder was adversely affecting her daily life due to constantly changing moods, and she wanted mental health treatment.

At the October 30, 2020 hearing, the juvenile court granted the agency custody of Z.K. and mother was granted supervised one-hour weekly visits. The court initially set a jurisdictional hearing and later continued the matter for a contested combined jurisdictional and dispositional hearing on December 17. On December 3, 2020, the agency filed a report prepared for the contested combined jurisdictional and dispositional hearing. The agency social worker recommended that the court deny mother reunification services based on her failure to reunify with the child's half-siblings N.K. and D.K as alleged in the amended petition.

In support of its recommendation, the agency social worker described the family circumstances and portions of the records concerning the earlier dependency proceedings regarding D.K. and N.K.

4

The agency social worker also reported on mother's substance abuse. Mother stated she had a history of substance abuse with methamphetamine and Norco, she had participated in drug treatment in 2010, her longest period of sobriety was between 2014-2016, and she last used drugs on November 11, 2020. The next day, November 12, mother entered a residential drug treatment program, which included classes on domestic violence and relapse prevention. She planned on moving into a Sober Living Environment after she completed the in-patient program. On November 25, mother reported a " 'slip up' " at the program but she and her counselor were working to get her back on track. Mother was scheduled for a mental health assessment on December 1. The agency social worker also reported on Z.K.'s situation. He was physically well and developmentally on target, and he had been placed in the same foster care home as his half-sibling three-year-old L.R. Mother had attended two (of four) supervised visits with Z.K., had engaged with the child, and there were no reported issues regarding the visits.

The December 17, 2020 contested combined jurisdictional and dispositional hearing concerned the dependencies filed on behalf of Z.K. and his half-sibling L.R. With regard to Z.K., the court considered the agency's reports prepared for the October 30 and December 17 hearings; the testimony of the agency social worker and mother; and counsels' arguments. The court also took judicial notice of portions of the records in the earlier dependencies regarding N.K. and D.K.

The agency social worker testified concerning the mother's participation in services, noting she was participating in residential drug treatment including drug testing; the program would be

5

completed in January 2021 and thereafter mother planned to enter a sober living environment. Mother had also completed a therapy assessment and was waiting to start therapy. Mother testified concerning her efforts to address her substance abuse problem since the end of the earlier dependencies, noting that she had not been in any type of treatment program between 2012 and 2020 when she entered residential drug treatment in this case.

At the conclusion of the hearing's evidentiary phase, the juvenile court, focusing on bypassing reunification services, specifically asked counsel to address whether mother had made reasonable efforts to treat her problems and whether it would be in the children's best interests to offer mother reunification services. Mother's counsel made no argument that mother was not a person described in section 361.5, but argued the court should nonetheless grant reunification services for L.R. for the following reasons: (1) L.R.'s father was being granted reunification services so granting mother services would not delay the proceeding; (2) mother was making efforts to address her substance abuse, having entered an in-patient drug treatment program; and (3) both mother and L.R. would benefit from services as mother was connected to L.R. and visits were going well. As to Z.K., counsel added that mother was committed to doing all that was necessary to maintain her sobriety and after completing her in-patient treatment program she planned to move to a sober living place.

The juvenile court found the allegations in the amended petition to be true and declared Z.K. a dependent of the court after finding he was a person described in section 300, subdivisions (b) and (j). The court granted the agency custody of Z.K. for out of home placement,

6

denied mother's request for reunification services, and set a section 366.26 hearing to consider termination of mother's parental rights and permanent placement for Z.K.

The juvenile court also found that denial (bypass) of reunification services was required under section 361.5, subdivisions (b)(10), (b)(11), and (c)(2). The court stated this finding was made based on clear and convincing evidence that mother had not made reasonable efforts to address her substance abuse problem plus she had failed to show, by clear and convincing evidence, that reunification services would be in Z.K.'s best interest. In so finding, the court relied on the following evidence. For many years mother had been addicted to methamphetamine and opiates. Her last participation in drug treatment was in February 2011 and she had no drug treatment between October 2012 (termination of parental rights over N.K. for failure to reunify despite services) and her entry into drug treatment in November 2020. Immediately following Z.K.'s birth in October 2020, both mother and child tested positive for methamphetamines and opioids. Mother entered a residential drug treatment program on November 12, in response to agency and court intervention, and thereafter she tested positive for methamphetamine at a level showing she was still using shortly before November 23. Thus, she had "just less than 30 days of sobriety" at the time of the December 17 hearing.

## DISCUSSION

### I. Applicable Law

As a general matter, when a child is removed from the custody of his parents, reunification services must be offered unless a statutory exception applies. (§ 361.5, subd. (a).) Under section 361.5, subdivision

7

(b), the juvenile court "need not" provide reunification services when the parent has previously failed to reunify with a child's sibling or half-sibling and the court finds, by clear and convincing evidence, either of the following: (1) a parent's court-ordered reunification services were terminated after the parent failed to reunify with the sibling or half-sibling and the parent subsequently did not make reasonable efforts to treat the problem that led to removal (*id.*, subd. (b)(10)); or (2) a parent's parental rights over a child's sibling or half-sibling were terminated and the parent subsequently did not make reasonable efforts to treat the problem that led to removal (*id.*, subd. (b)(11)).

If a parent is found to be described by subdivision (b)(10) or subdivision (b)(11) of section 361.5, the juvenile court "shall not" order reunification services "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) In other words, once the court determines a parent is one described in subdivision (b)(10) or subdivision (b)(11) of section 361.5, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources," ' " and "the burden is on the parent to change that assumption and show that reunification would serve the best interests of the child." (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

While a parent's reasonable efforts necessary to avoid the denial of reunification services "are not synonymous with ' " 'cure,' " ' . . . not every 'effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render [section 361.5, subdivision (b)] inapplicable. It is certainly

8

appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121; italics in original (*Jennifer S.*).)

In reviewing the juvenile court's finding of reasonable efforts, we "determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by" the clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, fn. omitted.) We do not "reweigh the evidence itself," or "insert [our] views regarding the credibility of witnesses" for those of the juvenile court; rather we "view the record in the light most favorable" to the juvenile court's order, indulging all "reasonable inferences" that the juvenile court may have drawn from the evidence and accepting the juvenile court's resolution of conflicting evidence. (*Id.* at p. 1008.)

When making the best interest determination under section 361.5, subdivision (c)(2), the juvenile court must decide whether a parent has showed that the child would benefit from court-ordered reunification services, after a consideration of " 'the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1124.) "We review a juvenile court's best

9

interest determination in this context for an abuse of discretion." (*Id.* at pp. 1124-1125.)

## II. The Juvenile Court Did Not Err in Finding that Mother Had Not Made Reasonable Efforts to Address Her Problems that Led to Removal of Child's Half-Siblings

Relying on isolated portions of the record, mother contends the juvenile court should have found she made reasonable efforts to treat her substance abuse problems that caused removal of the child's half-siblings. She asks us to consider, among other things, that at the time of the December 17 hearing she was engaged in a residential drug treatment program (that included group sessions in domestic violence and drug testing) and was in the process of being assessed for therapy and a program in domestic violence. In addition her visits with Z.K. were going well.

Our authority is limited to determining whether there is substantial evidence to support the juvenile court's finding in favor of the agency. Whether mother's circumstances at the time of the December 17 hearing demonstrated she had made reasonable efforts to address her substance abuse problems was a question "addressed peculiarly to [the juvenile] court, which heard [mother's] testimony and observed [her] demeanor at [the hearing]," together with the other evidence admitted at the hearing. (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749.) Mother makes no argument, and we see no reason to otherwise conclude, that the juvenile court did not fully and fairly consider the evidence regarding the reasonableness of her efforts to address her substance abuse problems. We therefore reject mother's claim of error on this basis.

10

### III. Mother's Argument that the Juvenile Court Should Have Granted Her Mental Health Services as a Component of Reunification Services Is Unavailing

Mother also seeks reversal based on a claim that the juvenile court should have granted reunification services to address her mental health issues, instead of treating this case "as an everyday drug case." According to mother, the court should have had a "more expanded view" of her mental illness, noting that her "mental illness" should have been the " 'starting' " point for reunification services, and that Z.K.'s dependency would have been the first opportunity for the court to grant her mental health services. She also contends her untreated mental health issues may have prevented her from engaging in programs between 2011 and 2020, but she had "a lot of insight" into her problems and was amenable to treatment that the juvenile court should have offered her in this case. We conclude mother's arguments are unavailing.

We begin by noting that, at the December 17 hearing, mother made no assertion, as she does in her writ petition for the first time, that her mental health issues may have prevented her from engaging in programs between 2011 and 2020. She also did not proffer any additional evidence directed at her mental health issues.

While the juvenile court, in denying reunification services, did not mention mother's mental health issues, it read and considered the agency reports that contained the only information regarding those issues. Additionally, the court took judicial notice of portions of the records in the earlier dependencies concerning the child's half-siblings. Those records showed that mother received reunification services for N.K. between January 10, 2011 and September 11, 2011 and family

11

maintenance services for D.K. between January 10, 2011 and March 1, 2012. While those records did not show the nature of the services, there is no question that mother was offered services during 2011 when she contends she was diagnosed with mental health issues and prescribed medication. These records do not, however, support mother's argument that Z.K.'s dependency would have been the first opportunity for her to receive court-ordered mental health services.

We decline to "infer from the limited record a lack of services. Notably, [mother] cites no authority for such an approach." (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 812.) "The rule is well settled that in examining the sufficiency of the evidence to support a questioned finding, the appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. [Citation.] There is no corollary to this rule which authorizes a reviewing court to draw inferences from the absence of evidence to overturn the questioned finding." (*Id.* at p. 813.) If it was mother's position that she should have been granted reunification services for Z.K. due to a previous lack of court-ordered mental health services in the earlier dependencies for the child's half siblings, she "should have cross-examined the social worker" or "introduced [her] own evidence on the issue. . . . [F]or [her] to now make this argument amounts to no more than an attempted sandbagging of the [juvenile] court. This we cannot tolerate." (*Ibid.*)

Finally, the cases cited by mother to support her argument that the juvenile court should have considered her "mental illness" as the

12

" 'starting point' " for reunification services, *In re K.C.* (2012) 212 Cal.App.4th 323 (*K.C.*) and *Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397 (*Patricia W.*), are factually inapposite as they concern whether an agency made reasonable efforts to provide reunification services for a parent with mental health issues. (See *K.C.*, *supra*, at p. 329; *Patricia W.*, *supra*, at p. 425.) Here, we are concerned with whether mother is entitled to reunification services in the first instance. Given mother's report that her mental health issues were diagnosed in 2011, her admitted failure to take prescribed medication, and her lack of explanation for not seeking treatment between 2012 and 2020 despite her belief her bi-polar disorder was adversely affecting her daily life, the juvenile court could have impliedly found there was no clear and convincing evidence that it would be in Z.K's best interest to provide mother with mental health services as a component of reunification services. We therefore reject mother's claim of error on this basis.

## IV. Conclusion

We deny mother's petition for writ relief as she has failed to meet her appellate burden of demonstrating error or an abuse of discretion in the juvenile court's denial of reunification services. Our refusal to grant mother affirmative relief is buttressed by "[t]he intent of the Legislature, [as expressed in legislation] especially with regard to young children," that the dependency process should proceed "with deliberate speed and without undue delay." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151 (*Marlene M.*).) "Section 361.5, subdivision (b) is part and parcel of the legislative scheme and recognizes that there are cases where delay attributed to reunification

13

services is more detrimental to the [child] than the competing policy of reunification." (*Marlene M.*, *supra,* at p. 1151.)  Here, the Legislature's goal that "dependency actions be resolved expeditiously . . . would be thwarted if the [December 17 hearing] had to be redone." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 625.)

## DISPOSITION

The petition for an extraordinary writ is denied on the merits. (Welf. & Inst. Code, § 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452(h).)  The request for a temporary stay is denied as moot.  Our decision is final immediately.  (Cal. Rules of Court, rules 8.452(i) & 8.490(b).)

_____

Petrou, J., Acting P.J.

WE CONCUR:


_____

Jackson, J.


_____

Wiseman, J.*


A161671

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.