Filed 10/10/24  T.W. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| T.W., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF KERN COUNTY, <br><br> Respondent; <br><br> KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Real Party in Interest. | F088430 <br><br> (Super. Ct. No. JD145076-00) <br><br> **OPINION** |

-ooOoo-

**THE COURT**\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Susan M. Gill, Judge.

Law Office of Andrew C. Smith and Andrew C. Smith, for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Carissa A. Edwards, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*      Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

Petitioner T.W. (mother) seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) from the juvenile court's order bypassing reunification services pursuant to Welfare and Institutions Code[2] section 361.5, subdivision (b)(10) and (11) and setting a section 366.26 hearing for November 6, 2024, as to her minor daughter, H.R. Mother contends the court's finding that she failed to make reasonable efforts to treat the problems that led to the removal of H.R.'s sibling within the meaning of the bypass provisions was not supported by sufficient evidence. She also seeks a stay of the section 366.26 hearing.

We deny the petition and request for a stay.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time the underlying dependency proceedings were initiated in October 2023, mother and father were not an intact couple. They had three children together—four-year-old H.R., who is the subject of the present appeal; two-year-old C.R.; and three-year-old V.R., who was subject of a previous dependency proceeding and ultimately adopted in 2022. Mother and father ended their relationship in February 2023, after which H.R. and C.R. resided primarily with father.

The current dependency proceeding was initiated after a fire broke out at father and the children's residence, which resulted in C.R.'s death. Father and the maternal aunt were outside in a vehicle at the time, and both H.R. and C.R. were alone inside. H.R. suffered only minor injuries. Father was intoxicated at the time, and drug paraphernalia was found inside the home. Father sustained serious injuries from attempting to rescue the children and needed to be hospitalized.

---

[1]     All further rule references are to the California Rules of Court.

[2]     All further undesignated statutory references are to the Welfare and Institutions Code.

During the Kern County Department of Human Services (department)'s investigation, mother reported she had not seen the children since June 2023, as father made it difficult. According to mother, father drank heavily, which is why they broke up, and it caused him to be unable to care for the children. Mother further reported she had history of using methamphetamine but did not use around the children. She began using before she had children, around five or six years prior, and had used on and off since then. She stated she could easily stop using, such as when she needed to care for the children. She had been sober for about a month.

The parents had a child welfare history including department intervention beginning in July 2020 when their son, V.R., was born, which we set forth in some detail here, as it resulted in the case that became the basis for the department's recommendation that mother be denied reunification services in the present case. At the time of V.R.'s birth, the department received a referral because he was born testing positive for THC, and mother tested positive for both THC and methamphetamine. Mother reported she used methamphetamine once three to four days prior, while H.R., one year old at the time, was in the care of her paternal grandmother. Differential Response services were offered. A couple months later, the department received another referral alleging the parents engaged in domestic violence in the children's presence. The referral was evaluated out, and the parents were referred to the Domestic Violence Unit for services.

Another month after that, in October 2020, the department received another referral alleging V.R. was delayed for his well-child visit and had been diagnosed as "Failure to Thrive." He was severely underweight, looked unkempt and malnourished, and had a foul odor and very long yellow nails. Mother was advised to take him to the emergency room but did not do so. V.R. was subsequently taken into protective custody, but H.R. remained in the parents' care on voluntary family maintenance services. A petition was filed on V.R.'s behalf, which specifically alleged that he had suffered or would suffer harm due to the parents' failure to provide him with adequate food, clothing,

shelter, or medical treatment. The juvenile court sustained the petition, removed V.R. from the parents' custody, and ordered family reunification services.

In June 2021, during their family reunification case, C.R. was born. The department received a referral and deemed it substantiated for general neglect, as C.R. tested positive for THC at the time of her birth, mother had received minimal prenatal care, and C.R. was hospitalized for exposure to syphilis. It was noted during the investigation that the parents were not actively working on their case plans, as to V.R. or H.R., but it was decided C.R. would remain with the parents on voluntary family maintenance.

In August 2021, the parents requested a modification in V.R.'s case to waive reunification services, but as they were not present on the day of the hearing, the petition was dropped from the calendar. At the six-month review hearing in September 2021, their services were terminated, with the parents in agreement that V.R. be adopted. At the section 366.26 hearing in January 2022, parental rights were terminated and V.R. was ultimately adopted.

In March 2022, the voluntary family maintenance plan for H.R. was closed. It was reported the parents were "sporadic" with substance abuse services but eventually completed them. The parents missed several drug tests and tested positive for THC consistently but no other substances. In May 2022, C.R.'s voluntary family maintenance plan was closed. The parents were reported to have completed their case plans, but "it did take more time than it should have," as the parents were inconsistent with drug testing.

As to the October 2023 referral, the department determined H.R. could not safely be left in the care of either parent, and on October 10, 2023, filed a juvenile dependency petition on behalf of H.R alleging she came within the court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect), (f) (cause another child's death through abuse

4.

or neglect), and (g) (no provision for support).[3] The petition specifically alleged H.R. had suffered or was at risk of suffering harm by the inability of father to provide regular care due to substance abuse and that he caused C.R.'s death by failure or neglect. There were no allegations pertaining to mother.

The juvenile court ordered H.R. detained from the parents on October 13, 2023. H.R. was placed with her sibling V.R.'s adoptive mother.

Following the detention hearing, father was discharged from the hospital and was able to speak to the social worker. He reported to the social worker that he began using methamphetamine nine years prior, around the time he met mother, at age 16. They would have periods of sobriety, but mother "would bring it back into the relationship and would pressure him to use." He stated that in December 2022, mother left him and the children, and he took the children with him and had been their primary caregiver ever since. He was in the process of getting full custody of the children but did not see a reason to "see it through" because mother was not trying to get them back from him.

Mother did not begin visiting H.R. until April 2024. The social worker reported the reason mother's visits were not set up between October 2023 and April 2024 was "unknown," but added the prior social worker indicated mother was difficult to get a hold of. Mother called H.R. a few times prior to April but H.R. refused to talk to her on one occasion and did not really participate on another. Mother cancelled several visits. Out of a total of 70 opportunities to visit between the detention hearing and June 2024, mother visited H.R. six times. Father and H.R. had some visits, but H.R. cancelled many of them because she did not want to visit with father.

In April 2024, mother reported she disagreed with the initial voluntary case plan consisting of substance abuse counseling, parenting training, and random alcohol and drug testing. She maintained she was not part of the incident that led to H.R.'s removal,

---

[3] The section 300, subdivision (g) allegation was later dismissed with prejudice.

5.

as she had not seen her since June 2023.  Mother felt she was being punished for something she did not do.  She declined to drug test and participate in the voluntary case plan.

The jurisdiction hearing was conducted on June 20, 2024.  The juvenile court found H.R. came within its jurisdiction pursuant to section 300, subdivisions (b) and (f) and set the matter for disposition.

Ahead of the disposition hearing, the department was recommending mother not be offered reunification services pursuant to section 361.5, subdivision (b)(10) and (11), in that in V.R.'s case, reunification services and parental rights had been terminated and mother had not made reasonable efforts to treat the problems that led to his removal.  During V.R.'s case, mother was ordered to complete parenting/neglect counseling, nurse training, substance abuse counseling, and submit to random drug testing.  Mother completed a 12-week parenting class.  She completed four sessions of neglect counseling but failed to complete the program.  She began substance abuse counseling but stopped attending after one month.  She failed to test often and did not provide one clean test.

It was further reported mother and H.R. appeared to have a bond, but mother "failed to make any reasonable subsequent progress in this case to suggest that ordering reunification services would be a benefit to the mother and child," as mother had not enrolled in any case plan components and refused all efforts to drug test.  H.R. was doing well in her placement, and the parents failed to show for several visits with her.

The disposition hearing was conducted on July 31, 2024.  Mother did not offer additional evidence but argued through counsel in favor of reunification services and against the grounds for the bypass recommended by the department.  Counsel argued that though mother did not participate in the case plan for V.R., she did subsequently successfully complete the voluntary case plans for H.R. and C.R.

Minor's counsel argued that though mother "made efforts" in completing her previous voluntary case plans, she had recently used methamphetamine as evidenced by

6.

her statements to the social worker. County counsel added that mother's drug use was one of the reasons father had custody of the children when the case began and argued "her efforts are not reasonable under all of the circumstances, considering her past history of drug use and her recent history and her complete failure to participate in any classes or drug tests or participate in any services, other than sporadic visitation." The court noted that during county counsel's argument, mother left the courtroom.

The court adjudged H.R. a dependent, ordered her removed from the parents' custody, and found the bypass provisions of section 361.5, subdivision (b)(10) and (11) applied to mother. In ruling, the court acknowledged the unique child welfare history of the family and noted mother had not engaged in her voluntary case plan in the current case and had only sporadically visited H.R. The court additionally found section 361.5, subdivision (b)(10), (11), and (4) applied to father and ordered that he not be provided with reunification services as well. The court set a section 366.26 hearing for November 6, 2024.

## DISCUSSION

Generally, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to "the child and the child's mother and statutorily presumed father" (§ 361.5, subd. (a)). However, it is also the "intent of the Legislature, especially with regard to young children, … that the dependency process proceed with deliberate speed and without undue delay." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151.) Thus, the statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the child than discounting the competing goal of family preservation. (*Ibid.*) Specifically, section 361.5, subdivision (b), exempts from reunification services "those parents who are unlikely to benefit" from such services or for whom reunification efforts are likely to be " 'fruitless.' " (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470, 474.)

The statutory sections authorizing denial of reunification services are sometimes referred to as "bypass" provisions. (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 821.) Relevant here, section 361.5, subdivision (b)(10) and (11), authorize the denial of services to a parent who has failed to reunify with another child (§ 361.5. subd. (b)(10)) or whose parental rights to another child were terminated (§ 361.5, subd. (b)(11)) if the court finds that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling…." If the court finds a parent is described by section 361.5, subdivision (b)(10) or (11) it "shall not order reunification … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).)

Mother's first argument is that while she concedes she did not reunify with V.R. and that parental rights were ultimately terminated, "the voluntary nature of that failure to reunify should make the bypass sections inapplicable." Mother does not expand upon this claim or give a reasoned legal argument with any authority or statutory analysis as to why the plain language threshold requirements of the bypass provisions do not apply, and thus we reject it as inadequate. (See rule 8.452 [the memorandum attached to a petition for extraordinary writ must include support for each point by argument and citation of authority].)

The more appropriate framing of the issue is mother's alternative claim—that the juvenile court's finding that she had not made reasonable efforts at treating the problems that led to V.R.'s removal was error because she completed the voluntary family maintenance plan with H.R. and C.R. months after parental rights were terminated in V.R.'s case in January 2022. Mother further contends her "self-admitted relapse … should not in and of itself justify the bypass of reunification services." We find no error.

"A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Substantial evidence exists when the evidence is "reasonable in

nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in the light most favorable to the juvenile court's findings and conclusions. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734.) "[W]e do not make credibility determinations or reweigh the evidence." (*Jennifer S v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121.)

The question of whether substantial evidence supports a finding that a parent did not make reasonable efforts is not focused on whether the parent has cured or abolished the problem or attained a certain level of progress but is focused on the parent's *effort*. (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1276.) "[N]ot every 'effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1121, italics omitted.)

We conclude the court's reasonable efforts finding was supported by substantial evidence. Contrary to mother's position, her participation in services in the spring of 2022 that resulted in the closing of voluntary family maintenance plans with regard to H.R. and C.R. did not compel the juvenile court to find she made reasonable efforts. Rather, the juvenile court was entitled to view mother's efforts in the context of the totality of the period between removal of V.R. and the disposition hearing for H.R. in the current case. (See *In re Jayden M.*, *supra*, 93 Cal.App.5th at p. 1274.) Since V.R.'s removal due to mother's neglect for V.R.'s very basic needs, and subsequent completion of her voluntary case plans as to H.R. and C.R., she lost contact with H.R. and C.R. in the

9.

several months leading up to the fire which led to the death of C.R. and the current dependency case. While, according to mother, father thwarted her attempts at contact, there is no evidence she was seeking a visitation or custody order through family court so that she could provide care for her children even though she knew father abused at least alcohol and according to her, could not care for the children. After H.R. was removed, mother refused to enroll in any voluntary services or drug test for the department despite her history and recent use of methamphetamine. She delayed visiting H.R., and when visitation began, only visited sporadically. The totality of the evidence supported the court's findings that mother's efforts to treat the problems that led to V.R.'s removal were not reasonable. Accordingly, mother was properly denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11).

## DISPOSITION

The petition for extraordinary writ and request for a stay are denied. The decision is final in this court immediately. (Rules 8.452(i), 8.490(b)(2)(A).)