Filed 12/13/23; certified for publication 1/9/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.B. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>A.B. et al.,<br><br>    Defendants and Respondents;<br><br>L.B. et al.,<br><br>    Appellants. | F086109<br><br>(Super. Ct. Nos. JD127177-03; JD136860-02; JD138698-02; JD141596-01; JD143815-00)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Appellants.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Respondent A.B.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Respondent A.S.

Margo. A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

At a dispositional hearing in April 2023, the juvenile court adjudged then 14-year-old L.B., six-year-old J.R., five-year-old Aur.S., three-year-old Aug.S., and one-year-old Aum.S. (collectively, "the children") dependent children and ordered reunification services to A.B. (mother) and A.S. (father), who is the father of Aur.S., Aug.S., and Aum.S. The children appeal from the dispositional orders, contending the juvenile court erred when it provided mother and father with family reunification services. We agree with the children that the juvenile court erroneously relied upon the parents' current participation in treatment when it declined to apply Welfare and Institutions Code[1] section 361.5, subdivision (b)(13). We therefore reverse the juvenile court's order and remand for a new disposition hearing consistent with section 361.5.

## PROCEDURAL AND FACTUAL SUMMARY

**Initial Removal**

On August 17, 2022, the Kern County Department of Human Services (department) received a referral alleging that there was ongoing domestic violence in the home with the children present. It was reported that the children's 15-year-old sister, M.H., intervened during a recent physical altercation between mother and father, which resulted in a bruise on the outside of M.H.'s eye. M.H. was picked up on the date of the incident by a maternal aunt, T.B. (aunt), who lived in the Bay Area.

An emergency response social worker, who was assigned to investigate the referral, determined that there was a call for service to law enforcement at the family's

---

[1] Further statutory references are to the Welfare and Institutions Code.

2.

home in March 2022. According to a sheriff's report from that incident, father was arrested for assaulting mother. M.H. initially denied witnessing any domestic violence in the home because she was concerned about entering foster care again.[2] The social worker obtained warrants to interview the children at their schools on August 22, 2022. On the following day, L.B. was not attending school when the social worker attempted to interview her, and L.B. did not return to school that week due to a positive COVID-19 test. Staff at a local high school informed the social worker that M.H. was no longer showing as an active student, and the social worker eventually discovered that a school in Marin County had requested M.H.'s student records. J.R. was interviewed by the social worker, but it was determined that she was unable to be interviewed due to her inability to answer basic questions.

On August 29, 2022, L.B. was interviewed by the social worker at her school. L.B. was at her grandmother's home at the time of the most recent incident. M.H. called L.B. after the incident and explained how father gave her a black eye. Mother kicked M.H. out of the home, and she was now living with aunt. L.B. was afraid to speak with the social worker, and she did not want to return to foster care. She acknowledged that mother and father were using alcohol, and she claimed the most recent incident was the only incident of violence in the home.

Later that same day, the social worker spoke with mother over the phone to address the allegations in the referral. Mother claimed that M.H.'s version of events was untrue, and she explained that M.H. " 'charged' " at father while father and mother were having a "verbal disagreement." She insisted that M.H. was accidentally hit in the eye when father threw up his arms to protect himself from M.H. Mother also indicated that aunt made the report to the department because aunt wanted to take the children from her.

---

[2] Mother and father were involved in dependency proceedings that terminated in January 2022.

3.

M.H. was reportedly taken from the home without mother's consent, but mother did not contact law enforcement because she was afraid that the children would be removed from her care. Father eventually took over the phone call at the social worker's request. Both father and mother continued to assert that their "verbal disagreement" did not become physical. Throughout the conversation both mother and father directed expletives at the social worker.

In a conversation with the social worker by phone, aunt explained how she traveled to Bakersfield to pick up M.H. after mother reportedly kicked her out of the home. Aunt had concerns about alcohol abuse and domestic violence in the home. M.H. was currently enrolled in school by aunt, and mother was currently in agreement with M.H. remaining with aunt. Aunt described mother as being a volatile person. Aunt hoped that M.H. could enjoy the remainder of her childhood, and she was provided information on processes to seek a legal guardianship of M.H.

Aunt handed the phone to M.H., who agreed to speak with the social worker. M.H. described how mother and father would get drunk and engage in domestic violence in the home. On the date of the incident, mother and father picked up M.H. from a paternal aunt's home while both parents were already drunk. Mother began yelling for M.H. after father hit mother, and M.H. ran into the room to hit father. M.H. was knocked to the ground when father hit her, and she could hear her siblings crying afterward. Mother refused to take M.H. to obtain medical care because mother insisted the injuries would heal on their own. M.H. told mother that she was going to the hospital. Mother called M.H. a " 'bitch,' " and told her to go live somewhere else.

M.H. left the home and was eventually picked up by her grandmother. All M.H.'s items were thrown out of the home when M.H. returned to gather her things. Mother told M.H. to never return to their home. M.H. went to live with aunt, and the bruise eventually healed without medical attention. M.H. also described an incident that took

4.

place two weeks earlier where mother and father were drunk and engaging in an altercation in the presence of the children.

The children had to be taken care of by M.H. when mother and father were drunk. M.H. could not recall how many times she intervened during mother and father's physical altercations because there were "too many" incidents. Mother and father would purchase alcohol whenever they had money, and they drank continuously until the alcohol was gone. M.H. indicated that mother and father became involved in a physical altercation every time they drank alcohol together. M.H. was worried about her younger siblings because mother often left Aum.S. in his crib. She admitted to lying to law enforcement in March 2022 because she did not want her siblings to go back into the foster care system.

On September 2, 2022, the children were taken into protective custody by law enforcement pursuant to a protective custody warrant. The department filed original petitions on that same date, which alleged the children were described by section 300, subdivision (b). The petitions alleged the children were at substantial risk of suffering serious physical harm as a result of mother's and father's substance abuse and ongoing domestic violence. At a continued detention hearing held on September 9, 2022, the juvenile court ordered the children detained from mother and father.

### Child Welfare History

The department's jurisdiction report detailed mother's and father's child welfare history. In 2007, there were three referrals involving allegations of domestic violence between mother and the father of M.H., but the referrals were closed as inconclusive. A referral was received in 2009 after mother tested positive for tetrahydrocannabinol (THC) at the time of a sibling's birth. Mother admitted to smoking marijuana during her pregnancy, and she declined to participate in supportive services.

In August 2011, the department filed a dependency petition for M.H., L.B., and two of their half siblings. The petition alleged mother had a lengthy history of exposing

5.

her children to domestic violence and substance abuse. Mother was ordered to participate in substance abuse counseling and random drug testing after her children were adjudged dependents of the court. Family maintenance services were ordered for mother in July 2012, and dependency was terminated in October 2012. In June 2013, a referral alleged that one of the children's half siblings suffered a skull fracture and lacerated liver after falling from the second story balcony while left with mother's teenage nephew.

The department received a referral in August 2014, alleging mother was an alcoholic, engaging in domestic violence, and threatening to kill herself and her children. The referral was deemed unfounded because none of the children disclosed information that was alleged in the referral to the social worker. In July 2015 and August 2015, two referrals alleged that mother was engaging in domestic violence and using drugs and alcohol. Mother admitted to occasional use of alcohol and "Spice," and she accepted Differential Response[3] services. In April 2016, a referral alleged that mother tested positive for THC during a pregnancy, but mother tested negative at the time of delivery.

On December 7, 2016, the department filed a dependency petition alleging M.H., L.B., J.R., and two half siblings were at risk of serious physical harm as a result of mother's substance abuse problem involving alcohol, marijuana, and "Spice." The petition further alleged that mother physically abused M.H. and her half siblings while mother was intoxicated. The allegations in the petition were found true, and M.H., L.B., J.R., and their half siblings were adjudged dependents of the court. Mother was ordered to participate in counseling for substance abuse and random drug testing.

The father of the half siblings was granted sole physical custody of the half siblings pursuant to a section 388 modification petition in January 2018, and jurisdiction

---

[3] Differential Response services are voluntary services provided in situations that do not call for the filing of a dependency petition. (See § 10609.9, subd. (a)(1)(D); see also <https://www.cdss.ca.gov/inforesources/child-welfare-protection/differential-response> [as of Dec. 13, 2023].)

over the half siblings was terminated. M.H., L.B., and J.R. were returned to mother under a plan of family maintenance services in February 2018. In June 2018, mother tested positive for alcohol and engaged in a domestic violence incident with father while under family maintenance, and she was required to re-enroll in substance abuse treatment. Dependency jurisdiction over M.H., L.B., and J.R. was terminated in January 2019 with sole physical custody awarded to mother.

On August 12, 2019, a referral was received alleging mother was drinking alcohol and engaging in domestic violence with father. Mother reportedly threatened to kill one of the children's older half siblings if he said " 'stuff' " about father. The father of the half siblings explained his concerns for the safety of the half siblings while they were participating in a weekend visit with mother. Mother refused to submit to a voluntary drug test. The referral was deemed unfounded due to the presence of "conflicting statements" after mother, father, M.H., and L.B. denied the allegations. Additional referrals involving allegations of domestic violence were received in August 2019 and October 2019, but the referrals were found to be inconclusive.

On November 29, 2020, the department received a referral after mother was arrested for domestic violence and father was heavily intoxicated. Mother admitted to several incidents of domestic violence, and M.H., L.B., Aug.S., Aur.S., and J.R. were placed into protective custody. The department filed dependency petitions alleging those children were at substantial risk of suffering serious physical harm as a result of the parents' ongoing domestic violence and untreated substance abuse. J.R. stated that mother drank daily, and mother was observed drinking gin straight from the bottle.

The allegations in the petitions were found true on January 27, 2021, and M.H., L.B., J.R., Aur.S., and Aug.S. were adjudged dependents of the court on March 23, 2021. Mother and father were ordered to participate in counseling for substance abuse and random drug testing as part of their family reunification services. In June 2021, both parents filed petitions pursuant to section 388 alleging that they completed their case

7.

plan, and the petitions requested that their children be returned to their custody under a plan of family maintenance services. The parents' petitions were granted in July 2021, and their children were returned under a plan of family maintenance. The juvenile court terminated its jurisdiction over M.H., L.B., J.R., Aur.S., and Aug.S. on January 21, 2022. Mother was awarded sole physical custody of M.H., L.B., and J.R., and mother and father were awarded joint physical custody of Aur.S. and Aug.S.

### *Jurisdiction and Disposition*

The department's report for the jurisdiction hearing recommended the allegations in the original petition be found true. Mother disclosed daily marijuana use for the past two months to help her keep an appetite, and she also reported drinking alcohol occasionally at night. At a jurisdictional hearing held on November 30, 2022, mother and father submitted on the department's report, and the juvenile court sustained the allegations in the children's petitions. The disposition hearing was continued to January 11, 2023, for the completion of a report.

In its disposition report, the department recommended that mother and father be provided family reunification services, and the fathers of L.B. and J.R. were not recommended services. Both father and mother were enrolled in parenting and domestic violence programs and participating in their supervised visitation. In October and November 2022, father missed three drug tests and tested positive for marijuana during another test. In September, October and November 2022, mother tested positive for marijuana twice and missed three tests.

At the disposition hearing held on April 5, 2023, mother and father were both present and represented by counsel. The parties stipulated to a request from mother's and father's counsel for the juvenile court to consider documents about their progress in services. Counsel for mother and father requested that the children be returned under a plan of family maintenance services. Counsel for the children opposed the parents' request for family maintenance and requested that the juvenile court deny family

8.

reunification services to both parents under section 361.5, subdivision (b)(13). The children's counsel argued that the parents' continued alcohol abuse after dismissal of the prior proceedings amounted to more than a "mere relapse" as described in the case of *In re B.E.* (2020) 46 Cal.App.5th 932 (*B.E.*). Counsel for the department submitted on its recommendation while acknowledging the parents' history before the court.

After hearing argument from all counsel, the juvenile court ordered the children removed from the custody of their parents and family reunification services be provided to mother and father. The fathers of L.B. and J.R. were both denied family reunification services. In declining the request of children's counsel, the juvenile court stated as follows, "I don't think, however, I have the ability to deny reunification services under (b)(13) . . . because the parents are engaging in treatment. They're engaging in counseling. It's not—it's not a passive resistance sort of situation, I agree with that. It wouldn't qualify under In re B.E., but they have shown they can engage in programs." A six-month review hearing was set for October 4, 2023. The children filed a timely notice of appeal on April 10, 2023.

## DISCUSSION

### I. Respondent's Request for Judicial Notice

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) " 'On a case-by[-]case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding.' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 802.) Courts also have discretion to resolve appeals that are technically moot if they

present important questions affecting the public interest that are capable of repetition yet evade review. (*In re A.M.* (2013) 217 Cal.App.4th 1067, 1078–1079.)

"While appellate courts rarely consider postjudgment evidence or evidence developed after the ruling challenged on appeal, such evidence is admissible for the limited purpose of determining whether the subsequent development has rendered an appeal partially or entirely moot." (*In re M.F.* (2022) 74 Cal.App.5th 86, 110; see *id.* at pp. 110–111 [taking judicial notice of minute orders from hearings that occurred after the challenged order]; see also *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422 [augmenting the record to show the issue on appeal was rendered moot by subsequent events in the juvenile court].) Mother's November 30, 2023 request for judicial notice of the juvenile court's October 31, 2023 order returning Aum.S., Aug.S. and Aur.S. to her custody is hereby granted.[4]

We acknowledge that the children's notice of appeal was filed on April 10, 2023, and it is likely that review of any ruling of the juvenile court's order for reunification services would be mooted by a subsequent review hearing. This fact is evident in the orders returning at least three of the children to mother's custody prior to the completion of this appeal. The issues raised in this appeal are of continuing public importance because they challenge the juvenile court's erroneous application of section 361.5, subdivision (b)(13), which risks children being deprived of permanency and stability in a timely manner. (See *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [refusing to address errors on appeal by declaring the case moot has the undesirable result of insulating erroneous rulings from review].)

Accordingly, we will reach the merits of this important issue of proper application of a bypass provision despite subsequent events. (*In re D.P.*, *supra*, 14 Cal.5th at p. 273

---

[4] We note that no motion to dismiss accompanied the request for judicial notice, but we still consider whether these subsequent events render the children's appeal moot.

10.

[appellate courts retain inherent discretion to review merits of appeal despite termination of juvenile court's jurisdiction].) The proper application of section 361.5, subdivision (b)(13) is an issue that is capable of repetition by the juvenile court and would otherwise evade review. (See *In re J.E.* (2016) 3 Cal.App.5th 557, 563, fn. 3 [review of merits on extension of services to 24-month review hearing even though reunification services could no longer be extended].) Furthermore, the juvenile court might provide reunification services in subsequent proceedings involving the children until the definition of active resistance has been properly clarified. Thus, we consider the merits of the appeal.

## II. Order for Reunification Services to Mother and Father

The children contend the juvenile court erred when it ordered that mother and father were to be provided family reunification services. They argue that mother's and father's pattern of behavior demonstrated active resistance to prior court-ordered treatment within the meaning of section 361.5, subdivision (b)(13).

### A. *Applicable Law*

As a general rule, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to "the child and the child's mother and statutorily presumed father" (§ 361.5, subd. (a)). However, it is also the "intent of the Legislature, especially with regard to young children, . . . that the dependency process proceed with deliberate speed and without undue delay." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151.) Thus, the statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the [child] than discounting the competing goal of family preservation. (*Ibid.*) Specifically, section 361.5, subdivision (b), exempts from reunification services " 'those parents who are unlikely to benefit' " from such services or for whom reunification efforts are likely to be " 'fruitless.' " (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470, 474.)

Section 361.5, subdivision (b)(13), provides (in relevant part) that a court "need not" provide reunification services when it finds, by clear and convincing evidence, that a parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention." This provision requires proof that the resistance to such treatment occurred within the three years preceding the filing of the current petition. (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780 (*Laura B.*); accord, *In re William B.* (2008) 163 Cal.App.4th 1220, 1230 (*William B.*).)

The Legislature has superseded *Laura B.* and *William B.* to the extent they suggest mere relapse constitutes resistance to court-ordered substance abuse treatment. (See § 361.5, subd. (b)(13), as amended by Stats. 2021, ch. 585, § 2.5; *B.E.*, *supra*, 46 Cal.App.5th at pp. 935, 939–941, 944.) Accordingly, section 361.5, subdivision (b)(13), now also states: "For purposes of this paragraph, 'resisted' means the parent or guardian refused to participate meaningfully in a prior court-ordered drug or alcohol treatment program and does not include 'passive resistance,' as described in [*B.E.*, *supra*,] 46 Cal.App.5th 932." (§ 361.5, subd. (b)(13).)

## B. Standard of Review

"A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124–1125.) "If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 26, italics omitted.)

*C. Analysis*

The children specifically contend that the juvenile court abused its discretion when it concluded that it could not deny reunification services to mother and father while they were participating in services. In order to find that section 361.5, subdivision (b)(13) was applicable to mother and father, the juvenile court was required to find that both parents "resisted" prior court-ordered treatment in the three years prior to September 2, 2022. The case of *B.E.* held that, in using the term " 'resisted,' " the Legislature meant active resistance, not passive resistance. (*B.E.*, *supra*, 46 Cal.App.5th at p. 941.) In doing so, the court extensively criticized a line of cases (including its own prior decision in *William B.*, *supra*, 163 Cal.App.4th 1220), which allowed for denial of reunification of services after only passive resistance—in other words, one mere relapse—even if the parent had benefited from services in the past. (*B.E.*, at pp. 935, 939–941, 944.)

Because the Legislature intended the bypass provision to apply to "parents who refuse to participate meaningfully in a court-ordered drug treatment program, not parents who slip up on their road to recovery" (*B.E.*, *supra*, 46 Cal.App.5th at pp. 934–935), *B.E.* held that courts should focus on whether a parent has actively demonstrated an unwillingness to change (*id.* at p. 942). The court reasoned that its interpretation of the "resisted" term was consistent with the statute's plain language, as well as the concept of futility (underlying the other bypass provisions): "It is decidedly *not* fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery. On the other hand, where a parent has recently actively resisted a court-ordered drug treatment program—i.e., demonstrated an unwillingness to commit to sobriety—it becomes more apparent that trying the same approach so soon is unlikely to work." (*Id.* at pp. 941–942.)

The Legislature amended the statute (effective Jan. 1, 2022), to explicitly exclude the *B.E.* court's description of "passive" resistance from being utilized to deny reunification services pursuant to section 361.5, subdivision (b)(13). (See § 361.5, subd.

13.

(b)(13), as amended by Stats. 2021, ch. 585, § 2.5.)  Accordingly, a parent may resist treatment by either "refusing to attend a program" or "failing to engage meaningfully in the drug treatment" while attending.  *(B.E.*, *supra*, 46 Cal.App.5th at pp. 940, 942.)  A parent who merely " 'go[es] through the motions' of treatment with the aim of achieving reunification and then immediately resum[es] a drug habit" is actively resisting treatment. (*Id.* at p. 943.)

Here, the department provided evidence that mother and father participated in court-ordered substance abuse counseling and random drug testing during the previous reunification period of March 2021 through July 2021.  Both parents successfully reunified with their children and dependency was eventually terminated with the parents regaining custody of the children in January 2022.  Both M.H. and L.B. disclosed repeated alcohol use and domestic violence by the parents in the months following the termination of the previous dependency.  Although the record remained undeveloped based upon the absence of a contested evidentiary hearing on dispositional issues, there was significant evidence contained in the reports that both parents had resumed their habit of consuming alcohol in excess and engaging in domestic violence.

The juvenile court's own stated reasons for not applying section 361.5, subdivision (b)(13) were as follows:

> "What the mother and [father] have shown over and over again is that they can take classes.  They can perform well in their classes.  And then as [children's counsel] said, when we terminate dependency jurisdiction, they go back to the same behaviors, the same patterns that they engaged in that brought the children into the system before, and that is just not acceptable.  We've got kids, older kids who have significant trauma because of this.  We have younger kids we want to prevent having that trauma.  I don't think, however, I have the ability to deny reunification services under (b)(13), 361.5(b)(13), because the parents are engaging in treatment.  They're engaging in counseling.  It's not -- it's not a passive resistance sort of situation, I agree with that.  It wouldn't qualify under In re B.E., but they have shown they can engage in progress.  [¶]  So what I'm going

14.

to do is I'm going to order reunification services with the same concern that has been expressed by [children's counsel] . . . ."

The juvenile court's apparent understanding of what constitutes "resistance" is inconsistent with the Legislature's recent amendment to section 361.5, subdivision (b)(13). Under the amended version, a parent can be found to "resist" previously court-ordered treatment where there was a refusal to "participate meaningfully" in the program. (§ 361.5, subd. (b)(13).) Furthermore, a parent's "mere relapse" after successfully undergoing drug treatment is excluded from the statute's definition. (See *ibid.*) However, "a form of active resistance that would warrant bypassing reunification services under subdivision (b)(13)," includes situations where parents " 'go through the motions' of treatment with the aim of achieving reunification and then immediately resum[e] a drug habit." (*B.E.*, *supra*, 46 Cal.App.5th at p. 943; see *id.* at pp. 942–943.)

A parent's engagement in treatment at the time of the disposition hearing does not prevent a juvenile court from denying reunification services pursuant to section 361.5, subdivision (b)(13). The bypass provision only requires proof of the parent's resistance during the three-year period prior to the filing of the petition. (*Laura B.*, *supra*, 68 Cal.App.4th at p. 780.) Thus, the parent's conduct in the three-year period preceding the petition is the only relevant consideration for the juvenile court to determine the applicability of section 361.5, subdivision (b)(13).

There is no requirement in the statute or case law that the parent must continue to resist prior treatment at the time of the disposition hearing. The children's current circumstances, being subjected to multiple dependency proceedings at such young ages, demonstrate the absurd consequences of such an interpretation. The juvenile court is not required to ignore the cumulative trauma that the children face each time they have to be removed from parental custody due to continued failures to overcome addiction. (See *William B.*, *supra*, 163 Cal.App.4th at p. 1228 ["Substance abuse is notoriously difficult for a parent to overcome, even when faced with the loss of . . . children."]; see also *ibid.*

["Experience tells us that such a parent has a high risk of reabuse."].) The purposes of section 361.5, subdivision (b)(13) would be rendered null if a parent could overcome their active resistance during the three-year period by simply attending treatment at the time of the disposition hearing.

Accordingly, the juvenile court's conclusion that it was unable to apply the bypass provision because the parents were "engaging in treatment" was in error. When the juvenile court's application of an incorrect legal standard prevents it from resolving factual disputes, the proper remedy is to reverse and remand for a new hearing under the proper standard rather than to decide the matter on the existing state of the evidentiary record. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 167 [rehearing proper where juvenile court applied incorrect legal standard].)

In light of the juvenile court's initial comments that the parents repeated the same patterns of drug abuse and domestic violence after taking classes, we cannot conclude that its application of an incorrect legal standard was harmless. A reasonable fact finder could have found that both parents demonstrated an "unwillingness to commit to sobriety" by continuing their pattern of " 'go[ing] through the motions' of treatment with the aim of achieving reunification and then immediately resuming a drug habit." (*B.E.*, *supra*, 46 Cal.App.5th at pp. 941, 943; see *id*. at pp. 941–943.)

We decline the children's request that the matter be remanded with instructions to bypass the parents for reunification services. As appellate counsel for father correctly points out, the children would need to demonstrate that the juvenile court was compelled to find that mother and father resisted prior court ordered treatment within the meaning of the applicable bypass provision to achieve such a result. Trial counsel for the children did not provide " 'uncontradicted' " and " 'unimpeached' " evidence that both parents actively resisted their prior treatment. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) The parties proceeded on the social worker's report without any additional evidence or testimony on the issue. Given the state of this undeveloped record, we

16.

cannot say that the juvenile court was compelled to find that mother and father were merely " 'go[ing] through the motions' " in their previous case.

In sum, the juvenile court's decision to provide mother and father family reunification services rested on its misapplication of section 361.5, subdivision (b)(13). We therefore reverse the dispositional order providing mother and father family reunification services for all five children and remand for the juvenile court to conduct a new disposition hearing based upon the family's present circumstances. We acknowledge this may have a limited effect because mother was being provided family maintenance services and Aum.S., Aug.S. and Aur.S. were returned to her custody on October 31, 2023. As discussed previously, we render our decision despite these subsequent events to address this important issue of statutory interpretation. (*In re D.P.*, *supra*, 14 Cal.5th at p. 273.)

## DISPOSITION

The judgment of disposition is reversed insofar as it provided family reunification services to mother and father for their children. The case is remanded to the juvenile court for a new disposition hearing. If the court determines that any parent should be provided family reunification services, it shall proceed as required by the statutory timeframes from the date of the children's initial removal.

DETJEN, Acting P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.

17.

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.B. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.B. et al.,<br><br>Defendants and Respondents;<br><br>L.B. et al.,<br><br>Appellants. | F086109<br><br>(Super. Ct. Nos. JD127177-03; JD136860-02; JD138698-02; JD141596-01; JD143815-00)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on December 13, 2023, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.

2.