Filed 2/2/26  Jessica J. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JESSICA J., Petitioner, v. THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Real Party in Interest. | F090801 (Super. Ct. No. JVDP-25-000192) **OPINION** |

THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ruben A. Villalobos, Judge.

J.J., in propria persona, for Petitioner.

No appearance for Respondent.

---

[*]      Before Hill, P. J., Detjen, J. and Harrell, J.

Thomas Boze, County Counsel, and Jonathan Lee, Deputy County Counsel; Gondon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Real Party in Interest.

-ooOoo-

Petitioner, Jessica J. (mother), seeks an extraordinary writ (California Rules of Court, rule 8.452)[1] from the juvenile court's orders issued at a contested disposition hearing denying her reunification services and setting a Welfare and Institutions Code[2] section 366.26 hearing as to her now three-year-old daughter, P.J. (the child). We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### Prior Dependency Proceedings

An original petition was filed after the child's older sibling, S.B., was placed into protective custody in August 2021. The petition alleged S.B. was at risk of suffering serious physical harm as a result of mother's substance abuse. The petition further alleged mother admitted to methamphetamine use, and she had been ordered to participate in substance abuse treatment by the Tuolumne County Superior Court.

The allegations in the petition were sustained on September 20, 2021. At the disposition hearing held on October 4, 2021, S.B. was declared a dependent and mother was ordered to comply with a family reunification case plan. Mother's case plan required her to submit to substance abuse testing, attend substance abuse treatment, and refrain from engaging in domestic violence. On March 21, 2022, family reunification services were terminated for mother and S.B. was returned to her care on a plan of family maintenance. An updated family maintenance case plan was signed on May 23, 2022, but mother did not enroll in substance abuse treatment or maintain contact with the

---

[1]     All further rule references are to the California Rules of Court.

[2]     All further code references are to the Welfare and Institutions Code.

2.

Tuolumne County Department of Social Services (Tuolumne DSS) after S.B. was placed in her custody. In August 2022, S.B. was removed pursuant to a protective custody warrant.

A supplemental petition alleged mother was engaging in domestic violence with her boyfriend and abusing illicit substances while S.B. was in her custody. The allegations in the supplemental petition were found true on September 6, 2022. At a contested disposition hearing on November 7, 2022, the court ordered no further reunification services would be provided to mother, and a section 366.26 hearing was set. Mother's parental rights to S.B. were ordered terminated at the section 366.26 hearing held on March 29, 2023.

### Initial Removal

These dependency proceedings were initiated in July 2025, after law enforcement responded to a domestic disturbance at mother's home. Mother initially called the Tuolumne County Sheriff's Office claiming that her boyfriend was trying to get in the home. A Tuolumne County Sheriff's deputy found the child, at two years of age, asleep next to mother's purse. Mother was uncooperative and refused to tell the deputy anything about the incident. The deputy discovered a glass pipe with white residue in her purse, and mother admitted to smoking methamphetamine out of the pipe on the previous day. Mother was placed under arrest, and the child was taken into protective custody.

Tuolumne DSS filed an original petition alleging the child was described by section 300, subdivisions (b)(1), (g), and (j). The petition alleged the child was at risk of suffering serious physical harm as a result of mother's substance abuse. The petition further alleged the child's sibling, S.B., was previously removed in 2021 due to mother's domestic violence relationship and use of illicit substances, and the child was at substantial risk of suffering similar neglect. The whereabouts of the child's father, Ryan B., were unknown and reasonable efforts to locate him were unsuccessful.

3.

At the initial detention hearing held on July 15, 2025, mother was present and appointed counsel. After a brief continuance, the child was ordered detained, and a jurisdiction hearing was set for August 11, 2025.

### *Jurisdiction Hearing*

The jurisdiction report, dated August 7, 2025, recommended that the allegations in the original petition be found true. Tuolumne DSS requested the matter be transferred to mother's county of residence in Stanislaus County. It was further requested that judicial notice be taken of mother's prior dependency matter involving S.B. The child was placed in the adoptive home of her older sister, S.B. Supervised visitation took place between mother and the child each week for two hours. Mother tested positive for THC (tetrahydrocannabinol) prior to a supervised visit with the child on July 17, 2025. She refused to complete any other drug tests until she was required by a court order.

On July 16, 2025, a Tuolumne DSS social worker spoke to the landlord of the residence where mother was staying on the date of removal. The landlord explained that mother and her boyfriend were allowed to stay at the home while they were working on their relationship. The landlord and mother had been drinking in the hot tub at night, but the landlord heard mother scream as she went back to her home.

Mother's boyfriend told the landlord that mother started hitting him while he was asleep. The landlord requested that mother get dressed when she started to run around outside without any clothes. Mother became angry and slapped her boyfriend and the landlord. The landlord explained that mother was fine until she started drinking. The report noted that Tuolumne DSS was concerned with mother's recent substance abuse and domestic violence relationship in light of her history with each of those issues during the previous proceedings.

At the initial jurisdiction hearing held on August 11, 2025, mother was present and represented by counsel. The jurisdiction hearing was continued at the request of mother's counsel. Mother was ordered to drug "test for the [d]epartment." On August 18, 2025,

4.

mother was granted an additional continuance. The results of mother's drug test were positive for methamphetamine and THC. A contested jurisdiction hearing was eventually set for September 17, 2025.

In advance of the contested jurisdiction hearing, Tuolumne DSS submitted an addendum report. The report documented several email messages the social worker received from mother. Mother insisted that she was not required to submit to drug tests because law enforcement illegally searched her purse. She also stated that the child's placement in an adoptive home could be a violation of the child and mother's due process rights.

The addendum report noted that mother stopped attending outpatient services, counseling, 12-step meetings, and domestic violence services when she was provided family maintenance services in S.B.'s case. The social worker believed mother had not shown any indication that she was willing to engage in services for the child's case. The assessment of Tuolumne DSS concluded mother made "zero progress" in showing she can mitigate its concerns regarding her substance use.

Mother was present for the contested jurisdiction hearing held on September 17, 2025. The courtroom was cleared for a *Marsden*[3] motion at mother's request. Mother was provided a notice of rights and responsibilities form, and she signed a petition to proceed in propria persona. Mother's request to appear in propria persona for the proceedings was granted, and the courtroom was reopened for the other parties.

The contested jurisdiction hearing proceeded with testimony from the social worker, and mother presented argument on her own behalf. After argument from all parties, the allegations in the original petition were found true, and the proceedings were transferred to Stanislaus County. Mother was ordered to comply with random drug and alcohol testing pending the disposition hearing.

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

***Disposition Hearing***

The juvenile court accepted the case at the transfer-in hearing held on September 29, 2025.  Mother was present at the hearing, and the juvenile court discussed the previous orders allowing mother to represent herself.  After the court's inquiry regarding self-representation, mother indicated that she would like to have counsel appointed.  The court set aside the previous self-representation orders, and counsel was appointed to mother.  A disposition hearing was set for October 16, 2025.

The Stanislaus County Community Services Agency (agency) filed a report for the disposition hearing on October 13, 2025.  The report recommended that mother and father be denied family reunification services pursuant to section 361.5, subdivision (b)(10)[4] and (11)[5] and the setting of a section 366.26 hearing.  The child remained in her same placement with S.B.  Mother's supervised visits took place twice per week for two hours at a time.

The social worker scheduled an appointment for October 2, 2025, to review documents for mother's referrals to various service providers, but mother stated she would not attend in-person meetings with the agency absent a court order.  Mother declined to meet with agency social workers to complete a social history, review appropriate referrals to services, or discuss the child's placement.  The social worker noted that mother's unwillingness to engage in the process significantly limited the agency's ability to provide meaningful support or intervention.

---

[4]     Section 361.5, subdivision (b)(10) allows the juvenile court to deny a parent reunification services if the court terminated reunification services for a sibling of the child and the court finds the parent failed to make reasonable efforts to treat the problem that led to the removal of the sibling.

[5]     Section 361.5, subdivision (b)(11) allows denial of reunification services if the court terminated parental rights for a child's sibling and the parent failed to make reasonable efforts to treat the problem that led to the removal of the sibling.

The disposition report provided a detailed description of the proceedings involving S.B., which started with her removal in August 2021 and ended in termination of parental rights in March 2023. The social worker's assessment opined that mother had shown minimal progress in addressing her ongoing problem with substance abuse. The agency was concerned that mother's history of delay tactics and noncompliance impeded progress in the court proceedings and the establishment of a stable and permanent living arrangement for the child.

At the initial disposition hearing held on October 16, 2025, mother expressed a desire to represent herself in the dependency proceedings while appearing remotely. The juvenile court continued the disposition hearing for mother to present her request in person.

On October 20, 2025, mother was present in court, and the juvenile court proceeded to inquire of mother to determine whether she could represent herself. During the series of questions, mother requested a *Marsden* hearing. The parties were excused for a confidential *Marsden* hearing. The court ultimately denied mother's *Marsden* motion, but it granted her request to appear in propria persona after further questioning. Mother's counsel was relieved, and the disposition hearing was continued for mother to prepare. Mother requested a contested hearing at the continued disposition hearing.

The contested disposition hearing began on November 20, 2025. The juvenile court accepted a written statement from mother after providing copies to each of the parties. The statement indicated that the factual foundation for subject matter jurisdiction under section 300 no longer existed once the district attorney declined to prosecute her for the incident that resulted in the child's removal. Mother also cited violations of due process and the Americans with Disabilities Act (ADA). The court allowed mother to raise her objections on the record, and it denied her request to dismiss the proceedings.

Counsel for the agency requested the juvenile court take judicial notice of its entire file and receive the agency's disposition report and Tuolumne County records into

7.

evidence. The court granted the agency's request and heard testimony from mother. Mother testified she would engage in reunification services if they were ordered by the court. She denied that she refused to engage in any services offered by agency social workers. The social worker testified that she made referrals to services for mother, but mother refused to communicate with the service providers. The court inquired if mother had any evidence to present, and mother responded in the negative on multiple occasions.

The parties were given the opportunity to present argument after the close of evidence. Counsel for the agency argued that mother should be denied family reunification services pursuant to section 361.5, subdivision (b)(10) and (11). The contested hearing was trailed for one day to complete closing arguments.

On November 21, 2025, counsel for the child joined the agency's arguments and requested that mother be denied family reunification services. Mother argued that the agency failed to meet its burden under section 361.5, subdivision (b)(10) and (11) because there was no evidence that mother posed a present danger to the child. She claimed the agency's bypass recommendation was "based on assumptions instead of evidence." Mother insisted that she was sober, stable, compliant, and cooperative.

After hearing argument from all parties, the juvenile court found that there was clear and convincing evidence that section 361.5, subdivision (b)(10)[6] was applicable to mother, and family reunification services were not provided to mother. In making its determination, the court stated,

> "This Court has looked at the entirety of the record in essence with a
> magnifying glass looking for that reasonable effort and frankly hoping to
> find that reasonable effort because [mother] is correct, that this is—bypass
> is to be reserved for the—only the appropriate case. The Court has not
> found that reasonable effort on [mother's] behalf. What I found is [mother]

---

[6]     The juvenile court did not address the applicability of section 361.5, subdivision (b)(11) when making its findings.

absolutely refusing to engage with the Agency, period, and then in argument indicating, [t]he Agency never met with me."

A section 366.26 hearing was set for February 4, 2026.

## DISCUSSION

### *Relevant Legal Principles and Standard of Review*

As a general rule, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to "the child and the child's mother and statutorily presumed father" (§ 361.5, subd. (a)). However, it is also the "intent of the Legislature, especially with regard to young children, … that the dependency process proceed with deliberate speed and without undue delay." (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1151.) Thus, the statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation. (*Ibid*.) Specifically, section 361.5, subdivision (b), exempts from reunification services "those parents who are unlikely to benefit" from such services or for whom reunification efforts are likely to be " 'fruitless.' " (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 474, 470.)

The statutory sections authorizing denial of reunification services are sometimes referred to as "bypass" provisions. (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 821.) Section 361.5, subdivision (b)(10) provides reunification services need not be provided if the juvenile court finds "[t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable

9.

effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(10).)

In addition, reunification services need not be provided when the juvenile court finds by clear and convincing evidence "[t]hat the parental rights of a parent over any sibling or half sibling of the child [have] been permanently severed … and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent." (§ 361.5, subd. (b)(11).)

"In order to meet the burden to establish, by clear and convincing evidence, a lack of reasonable efforts in this regard, child welfare workers must focus on the facts underlying the previous dependency action and its resolution, as well as on any efforts made by the parent since the sibling removal." (*Jennifer S.* (2017) 15 Cal.App.5th 1113, 1126 (*Jennifer S.*), italics omitted.) Moreover, "[t]he 'reasonable effort to treat' standard 'is not synonymous with "cure." ' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) "[A] 'parent who has worked toward correcting his or her problems [has] an opportunity to have that fact taken into consideration in subsequent proceedings.' " (*Ibid.*) "To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*Ibid.*)

"Moreover, not every 'effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.' " (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1121, italics omitted.)

On a challenge to the juvenile court's denial of reunification services, we apply the substantial evidence standard. We do so bearing in mind that the court's decision must be supported by clear and convincing evidence. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

### The Extraordinary Writ Petition

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4)(A).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).) In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing himself or herself is not trained in the law. In this case, mother's petition claims the juvenile court's order was erroneous on the following grounds: due process violations, unsupported factual findings, lack of reasonable services and visitation, speculative allegations, ineffective assistance of counsel, and cumulative errors.

Mother's petition does not comply with the requirements of rule 8.452 in that it did not include a memorandum containing a summary of significant facts, citation to the pages in the record, or coherent argument supporting the points raised. (Rule 8.452(b)(1)–(3).) Because her petition does not technically comport with the content requirements of rule 8.452, the real party in interest urges this court to dismiss the petition as facially inadequate. We decline to do so in this case. Rather, we will liberally construe the petition as a challenge to the juvenile court's finding that she had not made

reasonable efforts toward correcting the problems that resulted in the removal of the child's sibling.

Section 361.5 provides a parent who has worked toward correcting their problems an opportunity to have that fact taken into consideration in subsequent proceedings. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 843.) However, as previously noted, the juvenile court may consider the "duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness." (*Jennifer* S., *supra*, 15 Cal.App.5th at p. 1121, italics omitted.)

We conclude the juvenile court's reasonable efforts finding was supported by substantial evidence. The court was entitled to view mother's efforts in the context of the totality of the period between removal of S.B. and the disposition hearing for the child in the present case. At trial, mother merely complained that the agency failed to prove that she posed a danger to the child, and she insisted that she was sober and stable. However, mother regularly refused to participate in drug tests, and she provided positive results for methamphetamine and THC on occasions that she did drug test. Mother failed to engage with the agency's efforts to refer her to service providers, and that failure prevented the department from being able to assess her ability to participate in services.

Mother's unsubstantiated claim of sobriety does not demonstrate a "reasonable" effort in the context of mother's struggles with substance abuse. Mother neither completed nor participated in any substance abuse treatment programs that would have provided her with meaningful insight into her substance abuse problem in the years following S.B.'s removal. Accordingly, on this evidence, the juvenile court could find that mother failed to make reasonable efforts to treat her substance abuse.

The purpose of the reasonable effort prong of section 361.5, subdivision (b)(10) and (11), is not to create further delay for a child by allowing a parent, who up to that point has not reasonably addressed his or her problems, another opportunity to do so. (*In*

12.

*re Harmony B.* (2005) 125 Cal.App.4th 831, 843.) There is no evidence that mother made any real efforts to address her substance abuse and domestic violence problems since the sibling's removal. Viewing mother's history in its totality, we conclude there is substantial evidence to support the juvenile court's finding that mother did not make a reasonable effort to treat the problems that led to the removal of the child's sibling from her care. Accordingly, the court did not err when it denied family reunification services.

## DISPOSITION

The petition for extraordinary writ is denied. The request for a stay of the section 366.26 hearing is also denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).